IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| LIGADO NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-1797 |
| v. | ) | |
| | ) | Senior Judge Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

---

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS

---

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

BORISLAV KUSHNIR
Senior Trial Counsel

PATRICK ANGULO
KYLE BECKRICH
Trial Attorneys

*Attorneys for Defendant*

May 6, 2024

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

ARGUMENT ................................................................................................................... 1

    I.      The Communications Act's Comprehensive Remedial Scheme Displaces This Court's Jurisdiction Under The Tucker Act ........................................................... 1

    II.    Ligado Fails To State A Cognizable Takings Claim ............................................. 4

        A.      The Complaint Does Not Allege A Cognizable Property Interest .............. 4

        B.      Ligado Fails To Properly Plead Authorized Government Conduct .......... 12

        C.      Ligado Fails To State A Claim For A Physical Taking ............................ 13

        D.      Ligado Fails To State A Claim For A Categorical Regulatory Taking .... 16

        E.      Ligado Cannot State A Regulatory Taking Claim Under *Penn Central* .. 16

        F.      Ligado Fails To State A Claim For A Legislative Taking ....................... 18

CONCLUSION ............................................................................................................... 20

# TABLE OF AUTHORITIES

## CASES

*A & D Auto Sales, Inc. v. United States*,
748 F.3d 1142 (Fed. Cir. 2014) ............................................................................... 16

*Alpine PCS, Inc. v. United States*,
128 Fed. Cl. 303 (2016) .......................................................................................... 8

*Alpine PCS, Inc. v. United States*,
878 F.3d 1086 (Fed. Cir. 2018) ........................................................................ passim

*Am. Bankers Ass'n v. United States*,
932 F.3d 1375 (Fed. Cir. 2019) ............................................................................... 5

*Anaheim Gardens v. United States*,
107 Fed. Cl. 9 (2012) ............................................................................................. 7

*Appolo Fuels, Inc. v. United States*,
381 F.3d 1338 (Fed. Cir. 2004) ............................................................................ 19

*AT&T Servs., Inc. v. FCC*,
21 F.4th 841 (D.C. Cir. 2021) ................................................................................ 7

*Bair v. United States*,
515 F.3d 1323 (Fed. Cir. 2008) ............................................................................ 11

*Branch v. United States*,
69 F.3d 1571 (Fed. Cir. 1995) ................................................................................ 7

*Cedar Point Nursery v. Hassid*,
141 S. Ct. 2063 (2021) .......................................................................................... 10

*Conti v. United States*,
291 F.3d 1334 (Fed. Cir. 2002) .............................................................................. 9

*Del-Rio Drilling Programs, Inc. v. United States*,
146 F.3d 1358 (Fed. Cir. 1998) ....................................................................... 4, 13

*Dimare Fresh, Inc. v. United States*,
808 F.3d 1301 (Fed. Cir. 2015) ............................................................................ 15

*Fishermen's Finest, Inc. v. United States*,
59 F.4th 1269 (Fed. Cir. 2023) ...................................................................... 5, 6, 9

*Folden v. United States*,
   379 F.3d 1344 (Fed. Cir. 2004) ......................................................................... 2, 4

*Garelick v. Sullivan*,
   987 F.2d 913 (2d Cir. 1993) .................................................................................. 15

*Horne v. Dep't of Agriculture*,
   576 U.S. 350 (2015) ................................................................................................ 9

*In re LightSquared Subsidiary, LLC*,
   26 FCC Rcd. 566 (Jan. 26, 2011) .......................................................................... 2

*In the Matter of LightSquared Technical Working Group Report and LightSquared License
   Modification Application*,
   35 FCC Rcd. 3772 (Apr. 22, 2020) ..............................................................passim

*James v. Campbell*,
   104 U.S. 356 (1882) ................................................................................................ 9

*Katzin v. United States*,
   908 F.3d 1350 (Fed. Cir. 2018) ............................................................................ 15

*Lucas v. South Carolina Coastal Council*,
   505 U.S. 1003 (1992) ............................................................................................ 16

*McCutchen v. United States*,
   14 F.4th 1355 (Fed. Cir. 2021) ............................................................................. 13

*Members of Peanut Quota Holders, Ass'n, Inc. v. United States*,
   421 F.3d 1323 (Fed. Cir. 2005) .......................................................................... 5, 6

*Mobile Relay Assocs. v. FCC*,
   457 F.3d 1 (D.C. Cir. 2006) ........................................................................... 5, 7, 8

*Nat'l Am. Ins. Co. v. United States*,
   498 F.3d 1301 (Fed. Cir. 2007) .............................................................................. 8

*P & R Temmer v. FCC*,
   743 F.2d 918 (D.C. Cir. 1984) ............................................................................. 10

*Paradissiotis v. United States*,
   304 F.3d 1271 (Fed. Cir. 2002) ............................................................................ 20

*Rith Energy, Inc. v. United States*,
   247 F.3d 1355 (Fed. Cir. 2001) ............................................................................ 13

*Ruckelshaus v. Monsanto*,
    467 U.S. 986 (1984).................................................................................. 14

*Sandwich Isles Commc'ns, Inc. v. United States*,
    992 F.3d 1355 (Fed. Cir. 2021)................................................................... 4

*Steel Co. v. Citizens for a Better Env't*,
    523 U.S. 83 (1998)...................................................................................... 8

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*,
    535 U.S. 302 (2002).................................................................................... 16

*Taylor v. United States*,
    959 F.3d 1081 (Fed. Cir. 2020)................................................. 10, 12, 14, 15

*Todd v. United States*,
    155 Ct. Cl. 87 (1961).................................................................................. 9

*Todd v. United States*,
    155 Ct. Cl. 111 (1961)................................................................................ 9

*United Nuclear Corp. v. United States*,
    912 F.2d 1432 (Fed. Cir. 1990)................................................................... 10

*United States v. Causby*,
    328 U.S. 256 (1946)............................................................................. 14, 15

*United States v. Fuller*,
    409 U.S. 488 (1973).................................................................................... 9

*United States v. N. Am. Transp. & Trading Co.*,
    253 U.S. 330 (1920).................................................................................... 12

## STATUTES

28 U.S.C. § 2501......................................................................................... 8

35 U.S.C. § 261........................................................................................... 9

47 U.S.C. § 151........................................................................................... 19

47 U.S.C. § 301..................................................................................... passim

47 U.S.C. § 303(y)....................................................................................... 7

47 U.S.C. § 304........................................................................................... 6

47 U.S.C. § 305(a) ........................................................................................... 19

47 U.S.C. § 343 ............................................................................................... 19

47 U.S.C. § 402(b) ............................................................................................. 3

47 U.S.C. § 405 ............................................................................................... 18

47 U.S.C. § 405(a) ..................................................................................... 11, 12

47 U.S.C. § 902(b)(2)(A) ................................................................................ 19

## REGULATIONS

47 C.F.R. § 1.106 ............................................................................................ 12

47 C.F.R. § 1.3 .................................................................................................. 3

47 C.F.R. § 25.117 ............................................................................................. 3

## RULES

7.2(b) ................................................................................................................. 1

## FEDERAL REGISTER

*Flexibility for Delivery of Communications by Mobile Satellite Service Providers in the 2 GHz Band, the L-Band, and the 1.6/2.4 GHz Bands,*
   68 Fed. Reg. 33,640 (June 5, 2003) ........................................................... 16

Pursuant to Rule 7.2(b) of this Court's rules, defendant, the United States, respectfully submits this reply to our motion to dismiss the complaint of Ligado Networks, LLC (Ligado).

## ARGUMENT

Ligado seeks approximately $40 billion in compensation because it is impatient with the status of an ongoing, contested regulatory proceeding that is the proper place for Ligado's concerns to be addressed and resolved.  It does so even though the Communications Act's comprehensive remedial scheme displaces this Court's jurisdiction, because the Federal Communications Commission (FCC) could provide Ligado with adequate relief.  It does so even though FCC licenses are not property for purposes of the Takings Clause and even though Ligado has not pled an authorized taking of its license.  And it does so even though its grab-bag of takings theories all suffer fatal deficiencies.  This Court should therefore decline Ligado's invitation to inject itself into the pending regulatory proceeding and to adjudicate Ligado's unprecedented takings claims.

## I.      The Communications Act's Comprehensive Remedial Scheme Displaces This Court's Jurisdiction Under The Tucker Act

This Court lacks jurisdiction over Ligado's takings claims because the Tucker Act's gap-filling role is triggered only when another remedial scheme cannot afford adequate relief.  Def. Mot. 14.  And here, the Communications Act displaces the Tucker Act, *id.* at 15-18, because Ligado necessarily challenges the mandatory pre-conditions in the FCC's April 2020 Order,[1] and because Ligado has an avenue for adequate relief under the statutory framework created by Congress.

---

[1] *In the Matter of LightSquared Technical Working Group Report and LightSquared License Modification Application*, Order And Authorization, 35 FCC Rcd. 3772 (Apr. 22, 2020).

Ligado contends that the Communications Act and Ligado's conditional FCC license issued thereunder are irrelevant for two reasons:  first, because Ligado's takings claims ostensibly do not challenge the April 2020 Order; and second, because the FCC supposedly cannot afford Ligado adequate relief.  Ligado is wrong on both counts.

Ligado's effort to sideline the FCC's April 2020 Order fails for multiple reasons.  First, as Ligado concedes, *see* Pl. Opp. 6-7, the order contains pre-conditions that must be satisfied before Ligado can use the licensed spectrum.  When the FCC granted Ligado's amended license modification applications in April 2020, it imposed numerous pre-conditions that Ligado must satisfy "before ATC [ancillary terrestrial component] network operations commence," such as working with Government agencies to develop a program to repair or replace affected devices, requiring Ligado to coordinate with GPS device manufacturers, and requiring Ligado to establish a database of base station locations.  April 2020 Order, 35 FCC Rcd. at 3834-41.  It is undisputed that Ligado has not satisfied all of the pre-conditions in the April 2020 Order.  Nor does Ligado represent that it plans to complete all of the current pre-conditions.  Thus, to assert any claim to the licensed spectrum, Ligado would have to persuade the FCC to lift the pre-conditions.[2]  This request would have to be brought under the Communications Act's comprehensive remedial scheme.  *See Folden v. United States*, 379 F.3d 1344, 1357 (Fed. Cir. 2004) (explaining that the Communications Act is "a comprehensive statutory and regulatory regime governing orders of the Commission"); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1098 (Fed. Cir. 2018)

---

[2] Indeed, Ligado is aware of the process to waive license conditions.  *See In the Matter of LightSquared Subsidiary LLC*, Order and Authorization, 26 FCC Rcd. 566 (Jan. 26, 2011) (granting modification of license to include partial waiver of integrated service rule).

("The very purpose of the provision [in 47 U.S.C. § 402(b)] is to provide a remedy for licensees . . . that have suffered an injury from an FCC licensing decision.").

In addition, Ligado ignores that the April 2020 Order is being adjudicated in contested proceedings before the FCC, the agency tasked by Congress in the first instance to resolve the complex spectrum policy and technical issues involved here—most notably harmful interference with GPS, now a bedrock technology supporting civilian and national security applications. In fact, eight petitions for reconsideration—including one from the Executive Branch—are still pending at the FCC. Accordingly, Ligado is asking this Court to usurp the agency's decision-making and the judicial review process Congress created to resolve these sensitive issues by depriving the FCC of the opportunity to adjudicate any takings claims and by awarding Ligado billions in compensation for the alleged taking of supposed property—the modified license—that the FCC or court of appeals may later abrogate.

Ligado's argument that the FCC could not have resolved this dispute is similarly unavailing. If the FCC were to set aside or suspend the pre-conditions in the April 2020 Order— as it may do pursuant to 47 C.F.R. § 25.117—then Ligado ostensibly would be able to use the licensed spectrum regardless of whether it satisfied all of the pre-conditions (and regardless of Ligado's claim that the Department of Defense (DoD) and the Department of Commerce (Commerce) have refused to satisfy their obligations to comply with some of the pre-conditions). Ligado similarly would be able to use this spectrum if the FCC were to exercise its waiver authority under 47 C.F.R. § 1.3 with respect to the unsatisfied pre-conditions of the April 2020 Order. Ligado could also seek relief from the FCC for any takings liability. *Cf. Alpine*, 878 F.3d at 1096 (adopting "the proposition that the FCC had the power to grant Alpine adequate relief, by eliminating the taking, providing compensation, or some combination"). In the event the

FCC failed to provide adequate relief, the court of appeals could determine if a taking occurred and, if so, order the FCC to provide monetary compensation.  Ligado seeks to end-run the Communications Act by asserting a takings claim in this court rather than seeking relief from the FCC.  But the Federal Circuit expressly rejected that approach in *Alpine*.  *Id*. at 1096.

Ligado cites *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358 (Fed. Cir. 1998), to argue that a plaintiff need not petition an agency before bringing suit under the Tucker Act.  Pl. Opp. 13.  But *Del-Rio* presented no comprehensive remedial scheme that could have superseded Tucker Act jurisdiction.  *See* 146 F.3d at 1367 ("The government has not pointed to any displacing statute . . . , and we find no such instance of congressional withdrawal of Tucker Act contract jurisdiction in this case.").  In contrast, the Federal Circuit has repeatedly recognized that the Communications Act provides a comprehensive remedial scheme that displaces this Court's jurisdiction with respect to takings claims.  *See Folden*, 379 F.3d at 1357; *Alpine*, 878 F.3d at 1093; *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1362 (Fed. Cir. 2021).  Where, as here, Ligado's takings claims directly implicate the FCC's authority and remedies under the Communications Act, this Court lacks jurisdiction over those claims.

## II.    Ligado Fails To State A Cognizable Takings Claim

Even assuming the Court has jurisdiction, Ligado would still fail to state a cognizable takings claim for the reasons explained in our motion.  Def. Mot. 18-45.

### A.    The Complaint Does Not Allege A Cognizable Property Interest

First, the applicable statutory language, the traditional hallmarks of property, and relevant precedent all lead to one inescapable conclusion—spectrum licenses issued by the FCC are not cognizable property for takings purposes.  Def. Mot. 19-28.  Indeed, the Communications Act has been on the books for nearly a century, but Ligado has not identified a single case holding

that a spectrum license is a cognizable property interest for takings purposes.  And the court with primary jurisdiction over FCC licensing matters—the United States Court of Appeals for the D.C. Circuit—has held that FCC licenses are *not* property under the Takings Clause.  *Mobile Relay Assocs. v. FCC*, 457 F.3d 1 (D.C. Cir. 2006).

Ligado urges this Court to presume that *all* Federal licenses are property for takings purposes absent express language disclaiming a property interest.  Pl. Opp. 15, 17.  Ligado claims that *Members of Peanut Quota Holders, Ass'n, Inc. v. United States*, 421 F.3d 1323 (Fed. Cir. 2005), supports such a presumption, but nothing in that decision purports to create such a presumption or otherwise alter Ligado's burden to prove the existence of a property interest.  To the contrary, the Federal Circuit has repeatedly held that the party alleging a taking has the burden to demonstrate it possesses a cognizable property interest under the applicable scheme; it is not the Government's burden to refute it.  *See Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1384-85 (Fed. Cir. 2019).

Moreover, *Peanut Quota Holders* looked to the very same factors that undermine Ligado's claim that it possesses a cognizable property interest: the text of the authorizing statute and the absence of the traditional hallmarks of property.  As we demonstrated in our motion, the Communications Act expressly provides that an FCC license may be modified or revoked.  While Ligado criticizes the Government for "myopically" focusing on whether a license can be revoked, Pl. Opp. 14, that was the very basis for the Court's conclusion that there was no actionable takings claim in *Peanut Quota Holders*, 421 F.3d at 1335-36, and subsequent Federal Circuit precedent, *see Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1275-77 (Fed. Cir. 2023).  Although the Court treated the question of revocability in *Peanut Quota Holders* as bearing on whether there was a taking rather than whether there was a property interest, the

Federal Circuit has subsequently clarified that the question of revocability falls within the property interest inquiry under the first step of the takings analysis. *See Fishermen's Finest*, 59 F.4th at 1275-1277; *Conti v. United States*, 291 F.3d 1334, 1341-42 (Fed. Cir. 2002). *Peanut Quota Holders* thus supports rather than undermines the conclusion that Ligado lacks a cognizable property interest.

Ligado's various attempts to diminish the extent to which its license can be modified or revoked are unavailing. Ligado contends that like other FCC licensees, it "has strong renewal expectations that make its license, for all practical purposes, permanent." Pl. Opp. 16 (internal citation omitted). But Ligado's argument is incompatible with the Communications Act, which expressly provides that licensees must "waiv[e] any claim to the use of any particular frequency or of the electromagnetic spectrum as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise." 47 U.S.C. § 304. Ligado can have no renewal expectations based on the statute's plain text, which requires Ligado to *waive* the very right it asserts here, and Ligado cites no case law that would support its contrary contention. Ligado's dire warning that the "telecommunications industry would not exist in its current form if licensees could not rely on the continuing nature of their FCC licenses," Pl. Opp. 16, rings hollow given that Congress has always withheld renewal rights from a licensee. In a similar vein, Ligado contends that "permanent ownership is not necessary to establish a protected property interest," and points out that its "FCC license, to which its ATC authority is attached, has a base 15-year term." Pl. Opp. 16-17. But we never asserted that a license's time limit, in and of itself, foreclosed the creation of a cognizable property interest; what matters instead is that under the statute, Ligado can lose its license through modification, revocation, or through the

reconsideration process.  And, in any event, Ligado's license modification is up for renewal in 2024.

In addition, much of Ligado's property interest argument is centered around one particular use currently permitted under its license (with pre-conditions)—its contemplated terrestrial operations arising from the ATC regulation.  Pl. Opp. 15, 18-20.  But the FCC could take steps to eliminate the ATC regulation tomorrow; Ligado has no property interest in the continued availability of the regulation.  There can be no property interest in a particular rule of law; no one is entitled to insist that a rule remain unchanged for one's benefit.  *See Branch v. United States*, 69 F.3d 1571, 1577-78 (Fed. Cir. 1995); *Anaheim Gardens v. United States*, 107 Fed. Cl. 9, 14-15 (2012).

Although the revocable nature of Ligado's license is sufficient to defeat any property interest, the lack of exclusivity further undermines Ligado's position.  Ligado asserts that its license is exclusive, but it overlooks that the FCC has authority to license another private entity to use what Ligado considers to be "its" spectrum, so long as doing so would not create harmful interference among users.  *See* 47 U.S.C. § 303(y); *AT&T Servs., Inc. v. FCC*, 21 F.4th 841, 843 (D.C. Cir. 2021) (rejecting challenge to FCC allowing unlicensed users to operate within particular spectrum bands in which incumbents operate).  And in any event, Ligado points to no decision holding that exclusivity of an FCC license in and of itself establishes a property interest.

Because of the inherent limits of an FCC license, the only decision to squarely address the question has concluded that there is no property interest in such a license.  *See Mobile Relay*, 457 F.3d 1.  Ligado reads *Mobile Relay* as holding only that the property interest in a license does not extend beyond the "terms, conditions and periods of the license," Pl. Opp. 20-21, but this interpretation cannot be squared with the D.C. Circuit's actual analysis.  The court explained

that the interests at issue were the "800 MHz SMR spectrum licenses" held by the licensees that entitled them to make certain uses of the spectrum assignments prior to the FCC's reallocation of that spectrum.  457 F.3d at 12.  The claims were predicated on the contention that after the reallocation, the "value of their spectrum assignments," *i.e.*, their licenses, was purportedly reduced.  *Id*.  The court made clear that whatever limited use right the FCC provided to licensees "confer[s] the right to use the spectrum for a duration expressly limited by statute subject to the [FCC's] considerable regulatory power and authority," and "[t]his right does not constitute a property interest protected by the Fifth Amendment."  457 F.3d at 12.  Accordingly, Ligado's claim to be asserting a use right within the terms and conditions of the license is not a basis to distinguish *Mobile Relay*'s property interest holding.  As the D.C. Circuit held, a licensed use under section 301 "does not constitute a property interest protected by the Fifth Amendment" in light of the statutory and regulatory framework.  *Id*.

None of the other cases cited by Ligado establishes that it has a property interest or undermines *Mobile Relay*'s contrary conclusion.  Ligado contends that in *Alpine PCS, Inc. v. United States*, 128 Fed. Cl. 303 (2016), "this Court held that an FCC spectrum license constituted a property interest for purposes of the Takings Clause." Pl. Opp. 18.  But this statement is not a "holding."  This Court dismissed the takings claim in *Alpine* pursuant to 28 U.S.C. § 2501 for lack of jurisdiction—a threshold issue that the Court was required to address before examining the merits.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998).  Therefore, the Court's property interest discussion was necessarily dicta—"statements made by a court that are 'unnecessary to the decision in the case.'"  *Nat'l Am. Ins. Co. v. United States*, 498 F.3d 1301, 1306 (Fed. Cir. 2007).  And in any event, *Alpine* is particularly unhelpful to Ligado given that the Federal Circuit on appeal expressly declined to ratify this Court's dicta when it

held that the comprehensive remedial scheme of the Communications Act displaced Tucker Act jurisdiction over the claim.  *See Alpine*, 878 F.3d at 1095, 1098.

   *Todd v. United States*, 155 Ct. Cl. 111, 113-14 (1961), Pl. Opp. 20, is also of no help to Ligado.  The Federal Circuit directly questioned the continued viability of the *Todd* line of cases after the Supreme Court's decision in *United States v. Fuller*, 409 U.S. 488 (1973).  *Conti*, 291 F.3d at 1342 n.7.  And even assuming that *Todd* has not been abrogated, its facts are readily distinguishable.  That case involved state law fishing permits that could be freely devised, including by inheritance under Maryland law; the state agency did not retain the authority to alter the manner in which the permit was used; and the permit holders had the absolute right to renewal under the law.  *See Conti*, 291 F.3d at 1342 n.7;  *Todd v. United States*, 155 Ct. Cl. 87, 91 (1961).  None of these circumstances exist here.

   In addition, Ligado's references to tax and patent law are misplaced.  As we established in our motion, Def. Mot. 26, the Federal Circuit has already expressly rejected the Internal Revenue Code as a method of establishing a property interest for Fifth Amendment purposes. *See Fishermen's Finest*, 59 F.4th at 1278.  Similarly, Congress has dictated that "patents shall have the attributes of personal property," 35 U.S.C. § 261, and the Supreme Court has recognized that patents are treated as personal property subject to the Takings Clause at common law.  *See Horne v. Dep't of Agriculture*, 576 U.S. 350, 359-60 (2015) (quoting *James v. Campbell*, 104 U.S. 356, 358 (1882)).  Ligado points to no analogous statutory language or common law treatment of spectrum licenses.

   Finally, even assuming that an FCC license could constitute property, Ligado still could not establish a property interest in its particular license for two reasons.  First, any property interest would be subject to the limitations arising from the Communications Act, including the

9

specific pre-conditions of the license modification imposed in the April 2020 Order.  The "[G]overnment does not take a property interest when it merely asserts a 'pre-existing limitation upon the [property] owner's title.'"  *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) (citation omitted).  The Communications Act itself mandates that a license-holder must comply with the "terms" and "conditions" of a license.  47 U.S.C. § 301.  Here, to address GPS interference, the FCC attached numerous pre-conditions that Ligado must satisfy before it can use its modified license for terrestrial purposes—conditions that inhered in the title to any purported property interest arising from the order.  Importantly, the FCC's April 2020 Order makes clear that Ligado *itself* had proposed the relevant, unmet pre-conditions to obtain FCC approval.  April 2020 Order, 35 FCC Rcd. at 3835.  And as Ligado impliedly concedes, it has failed to satisfy those pre-conditions.  Ligado summarily blames the Government for an alleged lack of compliance, but Ligado can establish no property interest where it has failed to meet the very conditions it proposed.  *See P & R Temmer v. FCC,* 743 F.2d 918, 927 (D.C. Cir. 1984) ("A licensee may not accept only the benefits of the license while rejecting the corresponding obligations."); 47 U.S.C. § 301.

   *United Nuclear Corp. v. United States*, 912 F.2d 1432 (Fed. Cir. 1990), Pl. Opp. 22-23, does not suggest otherwise.  There, the Federal Circuit found a taking of certain uranium mining leases where the Government denied approval of mining after having specifically promised its approval.  912 F.2d at 1433-36; *see Taylor v. United States*, 959 F.3d 1081, 1089 (Fed. Cir. 2020).  Even though the leaseholder met all of the regulatory requirements, the Department of the Interior insisted that approval of a Tribe be obtained based on the doctrine of Indian self-determination, which was not a regulatory requirement for mining approval.  As an initial matter, *United Nuclear* contains scant analysis of the plaintiff's property interest, much less announces

any wide-ranging property interest rule as Ligado suggests, Pl. Opp. 22.  Moreover, that case bears no factual resemblance to this one.  There, the plaintiff was contesting conditions that were not part of its lease; here, Ligado seeks to avoid the very pre-conditions that it proposed to be part of its license and that govern the terms of its license.  Once again, if Ligado wishes to remove or modify the pre-conditions it proposed, it can seek to do so in accordance with the framework of the Communications Act.  But it has no cognizable property interest broader than the terms and conditions within its modified license.

Second, as discussed above, the FCC may statutorily revoke or modify a license where, as here, an adverse party has moved for reconsideration.  Def. Mot. 23-24.  Indeed, the provision that governs reconsideration, 47 U.S.C. § 405(a), existed long before Ligado's license was modified, and any license is contingent on the possibility that the FCC may revoke or modify its decision, including pursuant to this statutory reconsideration process.  *See Bair v. United States*, 515 F.3d 1323, 1327-29 (Fed. Cir. 2008) (holding that pre-existing statute inheres to property).  Although Ligado acknowledges that the provisions of the Communications Act constitute terms and conditions of its license, *see* Pl. Opp. 20, it nonetheless insists that reconsideration is irrelevant because section 405(a) states that a petition for reconsideration shall not excuse any person from complying with or obeying an order of the FCC.  Pl. Opp. 21-22.  Ligado misses the point.  Given that any interest that Ligado possesses is subject to the Act's reconsideration framework (and specifically the eight pending petitions), even if the Court were to assume that a licensee could at some point have a cognizable property right, any licensee still subject to the statutory reconsideration period could not establish a cognizable interest given that the FCC can grant reconsideration of the April 2020 order based on the valid concerns about GPS interference raised in those petitions.  *See* 47 U.S.C. §§ 301, 405(a); 47 C.F.R. § 1.106.

**B.**     **Ligado Fails To Properly Plead Authorized Government Conduct**

Ligado's allegations of widespread illegality by Federal officials are also fatal to its takings claims because a taking of property can be established only where the plaintiff assumes that the Government action at issue is both authorized and lawful.  Def. Mot. at 28-31.  In response, Ligado argues that Government action is "authorized" for takings purposes so long as Government actors acted within the general scope of their official duties.  Pl. Resp. at 43-44.  And here, Ligado maintains that the alleged acts were "surely within the scope of [DoD's] authority" because "the agency has authority to ensure national security."  *Id.* at 44.

Ligado's focus on DoD's general mission, rather than on specific acts that supposedly gave rise to a taking, is misplaced.  More than a century ago, the Supreme Court held that "[i]n order that the government shall be liable [under the Takings Clause] it must appear that the officer who has physically taken possession of the property was duly authorized so to do, either directly by Congress or by the official upon whom Congress conferred the power."  *United States v. N. Am. Transp. & Trading Co.*, 253 U.S. 330, 333 (1920).  Stated differently, "[a] government action cannot be a taking . . . if the government actors lacked the 'authority' to take the action."  *Taylor*, 959 F.3d at 1089 n.4.  The Court's inquiry, therefore, must focus on the authority granted to the particular Government officials for the specific action alleged to have resulted in the taking of Ligado's property.

As we previously explained, Ligado explicitly challenges the lawfulness of Government actions.  Def. Mot. 29-30; *see also* Pl. Opp. 44 ("The Complaint asserts that the agencies' conduct was part of an 'unlawful scheme' to wrongfully deprive Ligado of its ATC authority for defense purposes.").  In particular, Ligado alleges that DoD and Commerce appropriated its spectrum rights by disseminating false and misleading information, threatening private

companies, and illegally operating in or near the spectrum licensed to Ligado.  Indeed, Ligado's argument centers on allegations that the Government actions at issue were pretextual and in bad faith.  *See* Pl. Opp. 1, 5, 36-38, 42.  Ligado, however, fails to identify any authority for DoD or Commerce officials to engage in the alleged malfeasance.

Contrary to Ligado's claim, Pl. Opp. 43-44, *Del-Rio Drilling* provides no support for the view that a takings claim can rest on Government misconduct.  In *Del Rio*, the Federal Circuit merely recognized that *authorized* agency action that results in a taking may be contrary to law for other reasons that do not preclude a takings claim.  Addressing *Del-Rio*, the Federal Circuit subsequently confirmed in *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001), that a plaintiff is not free to challenge the lawfulness or wrongfulness of the Government action in the guise of a takings claim, but must instead "litigate its takings claim on the assumption that the [Government] action was both authorized and lawful."  Since then, the Federal Circuit has repeatedly reaffirmed the principle that a takings claim cannot be predicated on allegations of wrongful conduct.  *See McCutchen v. United States*, 14 F.4th 1355, 1366 (Fed. Cir. 2021).  Because here Ligado predicates its takings claims on allegations of unlawful and unauthorized government actions, its claims fail.

### C.   Ligado Fails To State A Claim For A Physical Taking

In addition to the foregoing shortcomings in its allegations, Ligado's individual theories for why it contends the Government has engaged in a taking also fail to state a claim.  Ligado's physical occupation theory, premised on its assertion that DoD has been operating undisclosed systems within its spectrum, is legally and factually deficient.  To start, the Communications Act proscribes any person from having a cognizable property interest in the spectrum itself, 47 U.S.C. § 301, and therefore the only claimed property right that could have been physically

invaded is Ligado's FCC license to use the spectrum at issue.  Def. Mot. 31.  Recognizing the difficultly of establishing a physical invasion of such an intangible interest, Ligado tries to manufacture a rule of law that "intangible rights can be subject to physical takings when the *government's conduct* is physical."  Pl. Opp. 25.  But that supposed maxim is found nowhere in the cases cited by Ligado, all of which involve an underlying tangible, physical asset—water.  And courts have consistently refrained from applying a physical takings framework to intangible property with no underlying tangible physical asset.  *See, e.g.*, *Ruckelshaus v. Monsanto*, 467 U.S. 986, 1005-06 (1984) (applying *Penn Central* test to alleged taking of intellectual property).

Ligado's related contention that spectrum is a "physical object," Pl. Opp. 26, has no legal support.  Indeed, the best that Ligado can muster is the wholly irrelevant statement in dicta in a case concerning the enforcement of chain broadcasting regulations that "the radio spectrum simply is not large enough to accommodate everybody," Pl. Opp. 26 (citation omitted).  This proves nothing, and only serves to highlight that Ligado is seeking to extend physical takings law into unchartered territory.

Even if spectrum or spectrum rights could be physically taken, the correct framework to apply would be that articulated in *United States v. Causby*, 328 U.S. 256, 266-67 (1946), and its progeny addressing so-called avigation easements, physical airspace incursions by the Government over real property.  The *Causby* line of cases establishes that the mere fact that the Government has operated within an individual's airspace does not constitute a taking.  *See Causby,* 328 U.S. at 266.  Courts have established a three-part test, including a showing that the flights were frequent, and that they directly, immediately, and substantially interfered with the landowner's use and enjoyment of the land.  *See, e.g.*, *id*. at 266-67; *Taylor*, 959 F.3d at 1090.  When a plaintiff fails to sufficiently plead these elements, an avigation easement claim must be

dismissed.  *Taylor*, 959 F.3d at 1090.  Here, despite Ligado holding the L-Band spectrum license for decades, it only offers speculation that the interference has occurred at all, and fails to explain how the Government's alleged physical incursion has constituted "direct," "immediate," and "substantial" interference with its use of the spectrum.  *See Causby*, 328 U.S. at 266-67; *Taylor*, 959 F.3d at 1090.

Ligado's alternative "dead zone" theory as a basis for asserting a physical taking is even more problematic.  Ligado is unable to identify any Government action that required it to maintain a so-called dead zone.  *See Garelick v. Sullivan*, 987 F.2d 913, 916 (2d Cir. 1993); *see also Dimare Fresh, Inc. v. United States*, 808 F.3d 1301, 1311 (Fed. Cir. 2015) (rejecting takings claim where the "government action [was] devoid of coercion, legal threat, regulatory restriction, or any binding obligation").

Instead, Ligado tries to bolster its "dead zone" theory by suggesting that alleged Government operations in its assigned spectrum created physical interference with Ligado's use of a portion of its nearby spectrum, Pl. Opp. 27.  But Ligado cannot meet its burden of showing that it was blocked or otherwise required to refrain from using the spectrum.  *See Dimare Fresh*, 808 F.3d at 1311.  That DoD allegedly operated in nearby licensed spectrum falls short of the required showing.  This is not a situation where there is only one access road into a property. And Ligado fails to plausibly allege any order that would legally preclude Ligado from using the spectrum.  Ligado suggests that in the absence of physical occupation or invasion, proof of legal compulsion is required only for a regulatory rather than a physical taking.  Pl. Opp. 27.  The Federal Circuit, however, has relied on the absence of legal compulsion to reject both physical and regulatory takings claims, *see Katzin v. United States*, 908 F.3d 1350, 1361-62 (Fed. Cir. 2018), and thus Ligado's failure to plausibly allege compulsion dooms its "dead zone" theory.

15

**D.**     **Ligado Fails To State A Claim For A Categorical Regulatory Taking**

Ligado's contention that it can establish a *per se* regulatory taking under *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1019 (1992), lacks merit because Ligado cannot meet its requirements.  First, Ligado fails to meaningfully rebut that the *Lucas* rule has been confined to tangible property, primarily real property, and that the Supreme Court and the Federal Circuit have not extended it to intangible property.  *See A & D Auto Sales, Inc. v. United States*, 748 F.3d 1142, 1151 (Fed. Cir. 2014) (declining to extend to contract rights).

Second, Ligado has failed to show that it has been deprived of "*all* economically beneficial uses" of its license.  A *per se* taking occurs only in the "extraordinary case" where the regulation permanently deprives property of all value.  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 329-30 (2002).  Ligado, however, can still use its license for its originally intended purpose—mobile satellite service (MSS).  Ligado contends that "[b]oth the FCC and Ligado have continuously treated Ligado's authority to provide ATC services as distinct from its authority for MSS operations," Pl. Opp. 31, but that is incorrect.  As expressed in the applicable regulations, the FCC has addressed terrestrial service as ancillary to satellite service for MSS operators.  *See* 68 Fed. Reg. 33,640 (June 5, 2003).  In other words, MSS operators would not be able to offer terrestrial service if they relinquished their satellite authorizations.  Thus, the terrestrial authority is fundamentally linked under the regulatory framework.  *See id*.  And given that Ligado makes no argument that it can establish a *Lucas* taking when MSS use of its license is taken into account, Count Two fails to state a claim.

**E.**     **Ligado Cannot State A Regulatory Takings Claim Under *Penn Central***

Ligado is no more successful in asserting a regulatory takings claim because it fails to satisfy the *Penn Central* factors.  As for the first factor—economic impact—Ligado insists that

the complaint alleges both a substantial economic impact and a causal link to the Government's alleged refusal to comply with the April 2020 Order.  Pl. Opp. 33-34.  But, again, Ligado does not allege, let alone establish, that it has complied with all pre-conditions in the order.  As a result, Ligado cannot establish a nexus between any economic harm and the alleged government action giving rise to a taking.  Ligado's argument also ignores that, since at least September 2022, it has voluntarily halted even a trial deployment of terrestrial operations.  Ligado Notice Regarding Deployment, Letter, Docket No. 11-109 & 12-340 (September 12, 2022), *available at* https://www.fcc.gov/ecfs/document/109120452106268/1 (last visited May 6, 2024).

As for the second *Penn Central* factor—interference with reasonable investment-backed expectations—Ligado argues that it "could not reasonably have expected [DoD's] obstructionism" after the FCC granted the applications in April 2020.  Pl. Opp. 35-36.  Setting aside Ligado's inaccurate labelling of DoD's conduct as "obstructionism," Ligado simply ignores that it has voluntarily participated in the telecommunications industry, one of the fields most heavily regulated by the Federal Government.  Moreover, as reflected in the April 2020 Order, when that order was issued the FCC proceeding had been going on for over a decade, during which time the Government had repeatedly expressed evidence-based concerns regarding the harmful effects of Ligado's proposed terrestrial use of its license.  *See* April 2020 Order at 3773-83.  Moreover, the April 2020 Order did not state, let alone find, that these concerns were unfounded.  Instead, the FCC attached pre-conditions to the license that it believed would ameliorate those concerns.  *See* id. at 3835-41.  In addition, it was entirely foreseeable that NTIA (acting on behalf of DoD and other Federal agencies), would use the well-established reconsideration process created by Congress, 47 U.S.C. § 405.

Ligado also argues that the final *Penn Central* factor—the character of the governmental action—supports the conclusion that a taking has occurred because "the [G]overnment has forced Ligado alone to pay the cost of DOD's need to use the spectrum." Pl. Resp. 37.  As an initial matter, Ligado's regulatory takings claim centers on allegations of unauthorized and unlawful conduct that cannot properly be the basis of a valid takings claim.  Def. Mot. 28-30. And as we explained in our motion, the third *Penn Central* factor weighs against Ligado because any potential remaining allegation of authorized conduct consists of the Government doing nothing more than exercising its lawful right to oppose the April 2020 Order.  Def. Mot. 41. Permissible actions to promote the public interest cannot support a regulatory taking.

### F.    Ligado Fails To State A Claim For A Legislative Taking

Finally, Ligado fails to state a claim for a legislative taking.  Def. Mot. 41-45.  Ligado first contends that Congress' enactment of the 2021 National Defense Authorization Act (NDAA) constituted a *Lucas* taking, but that claim fails for similar reasons as Count Two— Ligado can still use its license for MSS use, and therefore it cannot demonstrate that Congress precluded all beneficial uses of the license.  Indeed, the 2021 NDAA makes clear that it applies only to terrestrial use of the license, which Ligado does not dispute.  2021 NDAA §§ 1661-1664.

Likewise, Ligado cannot establish a legislative taking under *Penn Central*.  First, Ligado cannot meet the economic impact factor for the reasons discussed above.  Ligado's failure to satisfy the pre-conditions in the license breaks any nexus between the alleged harm and Congress' enactment of the NDAA.  Def. Mot. 41-42.

Second, Ligado's response confirms that it has not plausibly pled reasonable investment-backed expectations that Congress would not step into the highly regulated area of spectrum allocation and licensing, particularly to address the national security concerns raised by the April

2020 Order.  Def. Mot. 42-43; *Appolo Fuels, Inc. v. United States*, 381 F.3d 1338, 1349 (Fed.

Cir. 2004).  Ligado incorrectly suggests that Congress has regulated in these areas "by entrusting

the FCC" to resolve harmful interference concerns, and therefore "it had no reason to expect that

Congress would provide [DoD] authority in areas that Congress had assigned to the FCC."  Pl.

Opp. 41-42 (emphasis omitted).  But NTIA has long had regulatory authority to manage

Government spectrum, and NTIA issues the authorizations for GPS.  NTIA has long engaged

with Government agencies such as DoD that rely on GPS, including with respect to FCC

licensing decisions.  *See* 47 U.S.C. §§ 151, 301, 305(a), 902(b)(2)(A); April 2020 Order at 3831-

34.  In fact, Congress was so interested in the harmful interference concerns that it passed

legislation specifically requiring the FCC to notify Congress when permitting commercial

terrestrial operation in the relevant bands, 47 U.S.C. § 343.  Ligado could not be surprised that

Congress would address the significant commercial and national security concerns at issue here,

especially where the positions of the two Federal spectrum regulators differed, at least in certain

initial respects, on the measures required to address this important national security issue.

Ligado also cannot reasonably claim it was unaware of the GPS-interference problem

when the April 2020 Order was issued.  *See* Section II.E.  According to Ligado, "the FCC's

rejection of [DoD's] concerns" in the April 2020 Order led it to "reasonably expect that any

GPS-interference problems had been entirely resolved by the agency empowered to address the

issue."  Pl. Opp. 42.  But this argument falls flat.  At the time the NDAA was enacted, eight

petitions for reconsideration of the FCC's decision were pending, and Ligado assumes the risk

associated with any subsequent investment activities while these petitions are pending.

Ligado asserts that DoD's harmful interference concerns are "pretextual."  Pl. Opp. 42.

But putting aside the lack of any support for this assertion, Ligado fails to explain how DoD's

19

asserted motivation is legally relevant when *Congress itself* is the Government actor that purportedly engaged in the taking, *not DoD*.

Finally, the character of the Government's actions precludes a compensable legislative taking.  As we demonstrated, the plain language of the 2021 NDAA firmly establishes that Congress enacted the provisions at issue to address the potential harmful interference to GPS on DoD operations caused by Ligado's terrestrial use of its license.  Def. Mot. 43-45; *Paradissiotis v. United States*, 304 F.3d 1271, 1274-76 (Fed. Cir. 2002).  Ligado contends that a Government action in furtherance of the public interest can still be a taking where the burden falls uniquely on an individual property owner.  Pl. Opp. 43.  But none of the cases relied on by Ligado address a national security justification.  Ligado also alleges, again, that any harmful interference concerns are "entirely pretextual," and that Ligado's pretext allegations "must be taken as true."  Pl. Opp. 42.  Putting aside the lack of any basis for Ligado's bald claim of pretext, Ligado's suggestion that this Court has the authority to look behind Congress's stated justification in evaluating a legislative takings claim lacks support.  Congress enacted the NDAA provisions at issue to "serve substantial national security interests," *Paradissiotis*, 304 F.3d at 1275, and those paramount interests weigh against a taking.  *Id*.

## <u>CONCLUSION</u>

For these reasons, we respectfully request that the Court dismiss Ligado's complaint.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

BORISLAV KUSHNIR
Senior Trial Counsel

PATRICK ANGULO
KYLE BECKRICH
Trial Attorneys

May 6, 2024                      *Attorneys for Defendant*