# In the United States Court of Federal Claims

No. 23-1797L

(Filed: November 18, 2024)

```
*************************************
                                    *
LIGADO NETWORKS LLC,                *
                                    *
                                    *
            Plaintiff,              *
                                    *
      v.                            *
                                    *
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
*************************************
```

## OPINION AND ORDER

Plaintiff Ligado Networks LLC ("Ligado") is before this Court alleging that the United States (the "Government") prevented it from using its Federal Communications Commission ("FCC") license thereby taking its property in violation of the Fifth Amendment of the United States Constitution (the "Takings Clause"). The Government moved to dismiss under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), or in the alternative under RCFC 12(b)(6). The motion is fully briefed.

In addition, Iridium Communications Inc. and its affiliate Aireon LLC (together, "Iridium"), joined by three airline trade associations, filed a Motion for Leave to File an Amicus Brief in Support of Defendant's Motion to Dismiss. ECF No. 12. The Court granted the Motion.[1] ECF No. 22.

---

[1] In the Amicus Brief in Support of Defendant's Motion to Dismiss, Amici state that, "[b]ecause a petition for reconsideration renders an FCC order non-final for purposes of judicial review, none of the many stakeholders who filed petitions for reconsideration has yet had the opportunity to challenge the [April 2020 Order] under the Administrative Procedure Act in court." ECF No. 23 at 19. Amici refer to the fact that there are seven motions for reconsideration filed by interested parties pending review before the FCC and one motion for reconsideration that the FCC has not yet ruled on. Compl. ¶ 76. Thus, the Court ordered the parties to briefly address whether the Court lacks jurisdiction because the April 2020 Order is not final. ECF No. 12-1 at 27. The parties both argue in their respective briefs that the pending motions for reconsideration do not deprive this Court of jurisdiction because of a lack of finality of the April 2020 Order. ECF Nos. 24-25. This Court agrees. A petition for reconsideration does not alter the legal effect of an FCC decision or order. 47 U.S.C. § 405(a). The filing of a petition for reconsideration makes an FCC order or decision non-final (and thus non-reviewable)

For the reasons set forth below, the Court **DENIES IN PART AND GRANTS IN PART** the Government's Motion to Dismiss.

I.  **Summary of the Facts**

Ligado has held an FCC spectrum license authorizing it to provide Mobile Satellite Services, a service which only includes satellite use, within its licensed spectrum.  *See* Compl. ¶¶ 25-26.  Ligado sought to obtain a modified license to operate wireless terrestrial 5G services within its licensed spectrum, also known as Ancillary Terrestrial Component ("ATC") authority.  Compl. ¶ 3.

In an order dated April 2020, the FCC conditionally granted Ligado's applications to modify its license giving Ligado the requested ATC authority—allowing Ligado to provide wireless terrestrial 5G services within its licensed spectrum.  *See* April 2020 Order, *In the Matter of LightSquared Technical Working Group Report and LightSquared License Modification Application*, 35 FCC Rcd. 3772, 3783 (2020) ("April 2020 Order"); *see* Compl. ¶¶ 63-68.  The April 2020 Order is the subject of this case.

II.  **History at the FCC**

  A.  **Ligado's FCC License Applications and the Resulting April 2020 FCC Order**

In December 2015, Ligado filed applications to modify its license to include ATC authority, which would allow Plaintiff to provide wireless terrestrial 5G services within its licensed spectrum.  April 2020 Order, 35 FCC Rcd. at 3778-79.  In May 2018, following a public comment period in which concerns about the harmful interference implications of Ligado's plan were raised, Ligado amended its 2015 license modification applications by proposing several restrictive conditions, including a reduction in base station power and specific measures to mitigate concerns about potential harmful interference to Federal Government operations.  *Id*. at 3780-82.  In response, in December 2019, the National Telecommunications and Information Administration ("NTIA"), which manages the Federal Government's use of spectrum, notified the FCC that, based on its own assessment of the potential impact of Ligado's operations "to [NTIA's] missions, national security, and the U.S. economy," it could not recommend approval of the applications.  *Id*. at 3782-83, 3796.  The Order explains that opponents of Ligado's applications were chiefly concerned with "interference with GPS receiver operations."  *Id.* at 3795.

---

with respect to the right to seek further judicial review *by the party filing the petition* under the Communications Act.  *TeleSTAR, Inc. v. FCC*, 888 F.2d 132, 133 (D.C. Cir. 1989).  The Communications Act states that the filing of a petition for reconsideration does not "operate in any manner to stay or postpone the enforcement" of such an order.  47 U.S.C. § 405(a).  Thus, this Court concludes that the motions for reconsideration filed by other interested parties pending before the FCC do not deprive this Court of jurisdiction on the ground that the April 2020 Order lacks finality.

2

Then, in April 2020, the FCC granted Ligado's amended license modification applications seeking ATC authority and adopted the stringent conditions proposed by Ligado. *Id.* at 3783; *see* Compl. ¶¶ 63-68.  The FCC filed the order over the NTIA's objections, finding that "harmful interference concerns relating to GPS are effectively resolved based on the parameters of Ligado's amended modification applications, the test/data analyses presented in the record, and the conditions imposed" in the order.  April 2020 Order, 35 FCC Rcd. at 3841-42.

A few of the conditions in the April 2020 Order include that Ligado: (1) provide a 23 MHz guard-band of its licensed spectrum to separate its terrestrial base-station transmissions from neighboring operations; (2) reduce the base-station power levels from its initial proposal; (3) engage in a robust information exchange and coordination program with Government agencies before it could start its operations; (4) provide quarterly reports to the FCC concerning the progress of its satisfaction of these conditions; and (5) "cooperate directly" with the Department of Defense ("DOD") and the Department of Commerce ("DOC") to "expeditiously replace or repair as needed any U.S. Government GPS devices that experience or are likely to experience harmful interference from Ligado's operations."  *Id.* at 3835- 42.[2]

And finally, the Order states, "Failure to comply with these Conditions may subject Ligado to monetary forfeitures and/or the partial loss of ATC authority in a relevant geographic area based upon the type and scope of violation, or complete loss of such ATC authority." *Id.* at 3835.  Most relevant here is that the FCC recognized that the final requirement would require affected agencies to cooperate with Ligado.  Compl. ¶ 85.  The FCC stated that "[c]onsistent with FCC precedent in other proceedings, we would expect Ligado and U.S. Government agencies to work together in good faith, including with regard to negotiation to resolve any disputes."  April 2020 Order, 35 FCC Rcd. at 3825.

It appears from the record that Ligado has not informed the FCC that it has satisfied the conditions imposed by the FCC's April 2020 Order.  Ligado has not alleged otherwise.

### B.  May 22, 2020, Proceedings before the FCC

On May 22, 2020, NTIA, on DOD's behalf, filed a petition with the FCC for a stay of the April 2020 FCC Order and a petition for reconsideration.  Compl. ¶ 76.  On January 19, 2021, the FCC denied NTIA's petition to stay the April 2020 FCC Order.  Compl. ¶ 80.  The FCC found that NTIA had not met any of the requirements for a stay.  *Id.*  The FCC has not ruled on NTIA's reconsideration petition and there are seven other reconsideration petitions pending review.  Compl. ¶ 76.

### III.   Proceedings before the United States Court of Federal Claims

#### A.  Plaintiff's Complaint

---

[2] With respect to the requirement for an exchange of information, the April 2020 Order directed Ligado to cooperate directly with any agency whose GPS devices may be adversely affected.  *Id.* ¶ 101.

The Complaint alleges four separate claims under the Takings Clause alleging physical, per se (i.e., categorical) regulatory, regulatory, and legislative takings. Compl. ¶¶ 134-61. To support its takings claims, Plaintiff alleges that "Ligado's exclusive right to use this spectrum pursuant to both its duly authorized FCC license and ATC authority is property protected by the Fifth Amendment to the U.S. Constitution . . . ." Compl. ¶ 136.

Plaintiff claims that the DOD committed a physical taking of Ligado's ability to provide terrestrial services in its exclusively licensed spectrum by physically occupying Ligado's spectrum, Compl. ¶¶ 5; 128, 124. Ligado alleges that the DOD has been "operating previously undisclosed systems that use or depend on Ligado's spectrum without compensation." *Id*. Plaintiff explains,

> To the extent DOD's systems are transmitting or receiving signals in Ligado's allocated spectrum, that is a physical taking of Ligado's licensed spectrum, including its ATC authority. To the extent DOD's systems are receiving signals adjacent to Ligado's allocated spectrum, thus requiring the creation of a "dead zone" or buffer in Ligado's allocated spectrum to avoid harmful interference with DOD's systems, that too is a physical taking of Ligado's licensed spectrum, including its ATC authority.

Compl. ¶ 141.

Additionally, Plaintiff claims that both a categorical or a regulatory taking occurred when DOD refused to cooperate with Ligado according to the Order. In its Complaint, Ligado states that it has attempted to exchange information with the government, per the conditions, but the DOD and the DOC have refused to reciprocate. *Id*. ¶¶ 77-83. Further, Plaintiff alleges that "the DOD (with the Department of Commerce's assistance) made false or misleading claims to the FCC, Congress, the White House, other federal agencies, and the public about the effects of Ligado's proposed 5G terrestrial services on Global Position Systems ("GPS")." *Id*. at 2. Plaintiff alleges that the DOD, the DOC, and the NTIA have affected both a categorical and regulatory taking by:

> (i) threatening Ligado's business partners in order to interfere with the formation or performance of contracts necessary for the development of Ligado's authorized terrestrial services; (ii) failing to engage with the regulatory process and thereby delaying FCC action on Ligado's Applications; (iii) failing to implement the provisions of the April 2020 FCC Order, which provides for federal agencies to engage in information sharing and planning discussions in order to facilitate the deployment of Ligado's terrestrial services; (iv) making submissions to Congress to cause it to include punitive provisions in the NDAA to prevent Ligado from utilizing the spectrum for terrestrial services; (v) failing to certify under the NDAA that Ligado's use of its allocated spectrum for terrestrial services does not cause harmful interference with GPS receivers even though it is clear that it does not; and (vi) publishing incomplete, misleading, and false information about the potential

4

> for harmful interference from Ligado's development of its authorized spectrum for terrestrial services.

Compl. ¶¶ 145, 151.

Finally, Plaintiff alleges that a legislative taking occurred when Congress passed the National Defense Authorization Act for fiscal year 2021 ("NDAA") giving the DOD the power to effectively block Ligado from ever using its ATC authority. Plaintiff alleges that:

> Congress' passage of Subtitle E of Title XVI of the 2021 NDAA—which, among other things, takes away the right of any company that partners with Ligado on its terrestrial services to do business with DOD (the largest government agency and employer in the United States)—destroyed Ligado's ability to form the partnerships necessary to deploy terrestrial services in its spectrum and thereby effected a legislative taking of Ligado's property rights in its FCC license and ATC authority.

Compl. ¶ 155. Thus, Plaintiff claims that the NDAA "rendered Ligado unable to proceed with its FCC approved plans," which prevented Ligado from using its authorized spectrum. Compl. ¶¶ 105, 160. Plaintiff concludes that this taking has "catastrophic economic effects on Ligado, preventing it from earning income from the ATC authority conferred by its FCC-licensed spectrum." *Id.*

### B. The Government's Motion in Response to Plaintiff's Complaint

The Government moves to dismiss Plaintiff's Complaint under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"), contending that Plaintiff's claim should be dismissed for lack of subject-matter jurisdiction because the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction. Def.'s Mot. to Dismiss, ECF No. 11. Further, the Government moves to dismiss pursuant to RCFC 12(b)(6) arguing that Plaintiff fails to state a claim because Plaintiff's Complaint does not allege a cognizable takings claim.

### C. Supplemental Briefing in Response to the Court's Questions

After reviewing the parties' respective briefs, the Court ordered the parties to respond to the following additional questions by way of supplemental briefing:

> 1. The FCC granted Plaintiff a license with conditions attached. Have the conditions been met? Are the conditions, conditions precedent or on-going?
> 2. If the conditions are conditions precedent, and certain conditions require coordination and cooperation with certain government entities, how can Plaintiff comply with the conditions if the government entities refuse to cooperate or coordinate?
> 3. How can the FCC remedy refusal by government agencies to cooperate and coordinate if they refuse to do so?

4. The cases cited by the parties that hold that an FCC license is not a property interest appear to apply only to FCC action in not granting, revoking or limiting a license. In this case, according to Plaintiff, government entities other than the FCC are occupying or interfering with the granted spectrum. Why is this not a taking? Is the FCC able to remedy the occupation of or interference with Plaintiff's spectrum by other government entities?

5. Defendant correctly states that, in order for a compensable taking to occur, the taking must be authorized by the government. It would appear that the government entities alleged to have occupied Plaintiff's licensed spectrum acted within their authority. Doesn't this satisfy the requirement of authorized government activity?

6. Regarding the 2021 National Defense Authorization Act: doesn't Congress have the right to modify agency action? If so, how can there be a legislative taking?

7. How can a license, which is not a property interest vis-à-vis the FCC, become one vis-à-vis other government entities? Is the Plaintiff's complaint best characterized as an interference with its license by other government entities, which is a tort and which can be remedied by the FCC?

ECF No. 7. The parties filed their supplemental briefs responding to these questions on September 9, 2024. ECF No. 29, 30.

## IV.    JURISDICTION AND STANDARD OF REVIEW

The Tucker Act authorizes the Court of Federal Claims "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a). This grant of jurisdiction covers claims against the United States for just compensation pursuant to the Takings Clause. *See Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). The Tucker Act, however, serves only a "gap-filling role" that permits "action[s] against the United States for the breach of monetary obligations *not otherwise judicially enforceable*." *United States v. Bormes*, 568 U.S. 6, 12-13 (2012) (emphasis added). Thus, where another "precisely drawn, detailed statute" contains "its own judicial remedies," "the specific remedial scheme [of the other statute] establishes the exclusive framework for the liability Congress created." *Id.* Or stated more simply: "[S]tatutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *Id.* at 13; *see also Me. Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1328 (2020) ("The Tucker Act yields when the obligation-creating statute provides its own detailed remedies . . . .").

The burden of establishing the Court's subject matter jurisdiction rests with the plaintiff. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). When faced with a motion to dismiss for lack of subject matter jurisdiction, pursuant to the Rules of the Court of Federal Claims ("RCFC") 12(b)(1), a court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the plaintiff's favor. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see also Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995).

"To state a claim for a taking under the Fifth Amendment, a plaintiff must identify a legally cognizable property interest." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1384-1385 (Fed. Cir. 2019) (citing *Tex. State Bank v. United States*, 423 F.3d 1370, 1378 (Fed. Cir. 2005)). "The Constitution neither creates nor defines the scope of property interests compensable under the Fifth Amendment." *Conti v. United States*, 291 F.3d 1334, 1340 (Fed. Cir. 2002) (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Property interests arise from "existing rules and understandings and background principles derived from an independent source, such as state, federal, or common law. . . ." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1213 (Fed. Cir. 2005) (internal quotation marks omitted). To support a takings claim, a property interest must be more than a "mere unilateral expectation or an abstract need." *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980).

## V.    DISCUSSION

### A.    The Government's Motion to Dismiss Pursuant to RCFC 12(b)(1)

As a preliminary matter, the Court considers the Government's argument to dismiss Plaintiff's Complaint for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1). In its Motion to Dismiss, the Government argues that the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction over takings claims arising from FCC licensing decisions, and thus Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction. In determining whether a statutory scheme displaces Tucker Act jurisdiction, a court must "examin[e] the purpose of the [statute], the entirety of its text, and the structure of review that it establishes." *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1093 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 78 (2018) (quoting *Horne v. Dep't of Agriculture*, 569 U.S. 513, 527 (2013)).

The Federal Circuit has made clear that where a plaintiff's claim raises the type of challenge that implicates 47 U.S.C. § 402(a), then the claim, regardless of how it is styled, is subject to the Act's comprehensive remedial scheme rather than the Tucker Act's gap-filling grant of jurisdiction. Thus, the Court must determine whether Plaintiff's claims raise the type of challenge that implicates 47 U.S.C. § 402(a). *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1365 n.4 (Fed. Cir. 2021). The Communications Act provides that "[a]ny proceeding to enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter . . . shall be brought" to the regional courts of appeals. 47 U.S.C. § 402(a); 28 U.S.C. § 2342(1). The Government argues that Plaintiff's Complaint, "challenge[s] [] the terms of its FCC license." Def.'s MTD at 17. Plaintiff contends that its claims are not challenges to FCC orders and instead are takings claims against the Government. ECF No. 16 at 19.

Plaintiff, however, does not challenge the validity or propriety of the FCC order concerned. Instead, Plaintiff argues that various Government actors have not complied with the Order, preventing Plaintiff from using its license. *See* Compl. ¶¶ 140-41, 144-46, 149-52, 155-60. Plaintiff asks the Court, "to provide Ligado just compensation for . . . [the Government's] taking of Ligado's rights pursuant to the April 2020 FCC Order and prior FCC orders." Compl. at 68. Further, Plaintiff alleges "The stonewalling of Ligado by DOD and others has further stymied Ligado's ability to use its FCC license and ATC authority." *See* Compl. ¶ 79. Thus,

Ligado does not seek to modify or remove any conditions of the Order.  Instead, Ligado seeks damages against the Government for allegedly not complying with the Order and taking Plaintiff's licensed spectrum.

The Federal Circuit made clear that "we do not imply that all constitutional challenges to the FCC's actions must be presented to the FCC before they can be asserted." *Sandwich Isles*, 992 F.3d at 1365 n.4.  *Sandwich Isles* thus applies only to circumstances that specifically involve a "challenge[] to the FCC's actions." *Id.*  Accordingly, to the extent Plaintiff's claim does not seek to "enjoin, set aside, annul, or suspend any order of the [FCC] under this chapter," 47 U.S.C. § 402(b) and 28 U.S.C. § 2342(1) are not applicable, and this Court has jurisdiction to consider Plaintiff's claim.  47 U.S.C. § 402(a); 28 U.S.C. § 2342(1); *see Regional Rail Reorganization Cases,* 419 U.S. 102, 127-56 (1974).  Thus, because this Court has jurisdiction to consider Plaintiff's claim, the Government's Motion to Dismiss pursuant to RCFC 12(b)(1) is **DENIED**.

### B. The Government's Motion to Dismiss Pursuant to RCFC 12(b)(6)

#### 1. Is the FCC License a Valid Property Interest?

Ligado bases its alleged property interest on the fact that it holds an FCC license pursuant to the Communications Act, and in the April 2020 Order, the FCC modified that license to provide it with authority, subject to numerous terms and conditions, for terrestrial use.  Compl. ¶¶ 135-138.  In its Motion to Dismiss, the Government argues that Ligado's Complaint fails to state a claim because licenses issued by the FCC under the Communications Act do not constitute cognizable property for takings purposes, and thus Plaintiff cannot assert a valid takings claim.

The essential question in this case is whether the license granted to Ligado to utilize part of a designated spectrum under certain conditions is property for the purpose of asserting a takings claim.  Although the Government cites to precedent involving a takings claim against the FCC, these cases do not reach the issue of whether an FCC license is a valid property interest. *See Sandwich Isles*, 992 F.3d at 1361-65; *Alpine PCS, Inc.*, 878 F.3d at 1092-98, ECF No. 11 at 24.  Instead, in these cases the Federal Circuit affirmed holdings from this Court which dismissed takings claims against the FCC for lack of jurisdiction because the Communication Act's comprehensive remedial scheme displaces this Court's jurisdiction over takings claims arising from FCC licensing decisions.  *See id.*  The Government points to one case in which an FCC license has been considered not a property right and therefore not subject to a taking.  *See* ECF No. 11 at 30-32 (citing *Mobile Relay Associates v. F.C.C*, 457 F.3d 1, 12 (D.C. Cir. 2006)).  However, this case involves an action by the FCC in limiting a license.  *Mobile Relay Associates*, 457 F.3d at 12.  Therefore, there is legal support for the argument that vis-à-vis the FCC a license is not property.[3]  But this case is about another government agency, the Department of

---

[3] The Court does not agree with the Government's attempt to inflate the holding in *Mobile Relay Associates* into a "categorical" statement that an FCC license is not property for purposes of a taking claim across the board: "This right does not constitute a property interest protected by the Fifth Amendment." *Mobile Relay Associates*, 457 F.3d at 12.  The holding

8

Defense, "occupying" part of the spectrum licensed to Ligado. "Occupy" is, of course, a tendentious term in favor of Ligado's argument, but it seems an apt. The electro-magnetic spectrum is a physical phenomenon, and the Department of Defense ("DOD") is accused of using it to the exclusion of Ligado, which has been granted the right to use it, albeit with limitations. This Court, therefore, holds that, for purposes of the Motion to Dismiss, that Ligado's FCC license is a property interest vis-à-vis DOD but not vis-à-vis the FCC.

It is not clear that the FCC could provide an adequate remedy for Ligado. *See Alpine PCS, Inc.*, 878 F.3d at 1098 (finding that the Communication Act's statutory scheme afforded the licensee "'a ready avenue' to bring its takings claim and displaces Tucker Act jurisdiction over that claim" because the licensee "could have raised a constitutional takings claim; the FCC had the authority to grant relief; and the D.C. Circuit had jurisdiction to review whether a taking occurred."); *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1365 n.4 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022) (explaining that where "the FCC is in the position to prevent an alleged taking in the course of its own proceedings, the agency must be made aware of any such claim," which is "then subsumed into the agency's final decision and can be appealed only to the court of appeals"). As stated above, these cases arise from FCC licensing decisions. The Court is not aware of any law that holds that the FCC has the authority to award monetary damages for improper occupation of all or part of a spectrum licensed to another. Besides pointing to remedies for intransigence and the FCC's tools for dispute resolution, the Government does not cite to specific legislation or regulation regarding the FCC's authority to remedy Ligado's specific claim.[4] The Government also spends some time on modification of the conditions imposed by the FCC. ECF No. 11 at 31-33. But Ligado's argument is—assuming that the conditions are satisfied—the FCC cannot restore to Ligado whatever part of the licensed spectrum DOD is occupying or can award monetary damages for the taking of it.

In supplemental briefing, the Court asked the parties: "Is the FCC able to remedy the occupation of or interference with Plaintiff's spectrum by other government agencies?" The Government did not address this issue in its response, although discussed it in its supplemental

---

regarding the plaintiff's taking claim was in the context of FCC regulation, like all the other cases cited by the Government. Furthermore, the statement would be *dictum* if it were to be expanded to all takings claims, as such a conclusion was not necessary to the decision. Finally, the case is not binding on this Court.

[4] The Government's supplemental brief focuses on intransigence and informal coordination. "If Ligado informs the Commission of its concerns about alleged agency bad faith, the FCC can engage NTIA assistance, to address alleged intransigence. The FCC could set aside or suspend the conditions at issue, in whole or with respect to the specific agencies, locations, or devices at issue." ECF No. 29 at 4 (citing 47 C.F.R. § 25.117). The Government's supplemental brief also states, "FCC routinely resolves coordination disputes between Federal and non-Federal operators through informal means, putting it in a strong position to remedy alleged bad faith by agencies. Indeed, the 2014 precedent cited in the April 2020 Order contemplated "informal negotiation, mediation, or non-binding arbitration" to "clearly define and narrow the issues for formal agency resolution by NTIA, the Commission, or jointly, as applicable." ECF No. 29 at 5 (citing AWS-3 Notice, 29 FCC Rcd. at 8539).

brief.[5] But in its Motion to Dismiss, in addition to promoting the modification of conditions as a remedy, the Government focused on remedies for intransigence and for informal coordination.[6] The Court's own research, however, discovered the following:

> The Commission and its Enforcement Bureau enforce the Communications Act and the Commission's rules and orders in two primary ways: (1) by initiating investigations, and taking appropriate action if violations are found; and (2) by resolving disputes between industry participants either through mediation and settlement or adjudication of formal complaints.

Federal Communications Commission, https://www.fcc.gov/general/enforcement-primer (last visited October 25, 2024). What is "appropriate action," and is this case a dispute between "industry participants"? The Court is not clear on whether the FCC can be an adequate remedy. For purposes of a Motion to Dismiss, the fact that the Government has not been able to point to any FCC authority that would address Ligado's claim, moves the Court to side with Ligado on this point.

### 2. Conditions

The Government argues that, even if an FCC license is property for purposes of a takings claim, Ligado has not satisfied the conditions precedent to using the license. ECF No. 11 at 26, 37. On the contrary, Ligado argues that the conditions are ongoing not precedent. In the Court's view, the only condition of any significance is the one requiring Ligado to coordinate with agencies, including DOD, to address potential GPS interference. The others seem to depend on this one. Even if all the other conditions were satisfied, this one would prevent the implementation of the license according to the Government's condition precedent argument. Ligado alleges that the DOD, the DOC, and the National Telecommunications and Information Administration ("NTIA") refuse to engage with Ligado. ECF No. ¶ 145. Accepting this claim to be true for purposes of a motion to dismiss, the Court agrees with Ligado that "the government argues that it cannot be held liable for a taking because DOD has nullified Ligado's property interest by refusing to implement the Order." ECF No. 30 at 3.

### 3. Government Authorization

*Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998) requires that in seeking damages for a taking under the Tucker Act that the government's action must fall "within the scope of [the agencies'] duties." As Ligado states in its response to

---

[5] The Government argues in its supplemental brief that, Ligado does not have a property right, and thus, any "questions that examine whether a taking has occurred – such as the nature of the alleged Governmental action – are therefore irrelevant to the Court's analysis under step one." ECF No. 29 at 7-8.

[6] This is because Ligado argues that the DOD refuses to cooperate with Ligado, preventing it from fulfilling one of the conditions that the FCC imposed on the license. ECF No. 16 at 31.

Question 5 posed by the Court: "Each of the actions that the government highlights unquestionably falls within DOD's authority—to disseminate information, including to Congress; to withhold government contracts from Ligado's business partners pursuant to the NDAA; and to protect GPS under 10 USC sec. 2281." ECF No. 30 at 6. The Court agrees with Ligado that the actions of the government agencies were authorized.

### 4. 2021 National Defense Authorization Act

The text of Sections 1661-1664 does not state that Ligado may not use the spectrum assigned to it by the FCC license. *See* 2021 NDAA, Pub. L. 116-283, §§ 1661-1664, 134 Stat. 3388, 4073-76 (2021). But Ligado asserts that it effectively does so.[7] Section 1662 forbids the Secretary of Defense from entering into contracts with an entity that utilizes the part of the spectrum licensed to Ligado "unless the Secretary has certified to the congressional defense committees that such operations do not cause harmful interference to a Global Positioning System device of the Department of Defense." *Id.* at § 1662. Section 1663 provide for a study by the National Academies to be commissioned by the Secretary to "carry out an independent technical review" of the FCC Order "to the extent that such Order and Authorization affects the devices, operations, or activities" of DOD. *Id.* at § 1663. Section 1664 states that DOD cannot use funds to comply with the FCC Order until the secretary "submits to the congressional defense committees an estimate of the extent of covered costs and the range of eligible reimbursable costs associated with harmful interference" to the DOD's GPS receivers. *Id.* at § 1664.

According to the Government, the National Academies of Science, Engineering, and Medicine (NASEM) "found that high-precision GPS receivers would experience significant harmful interference from Ligado's proposed terrestrial operations, that the conditions in the FCC Order did not resolve DOD's harmful interference concerns, and that the FCC's mitigation conditions were impractical in many circumstances." ECF No. 11 at 12. The Secretary of Defense has not made the certification to the defense committees as provided by section 1662, presumably because of the NASEM Report.[8] ECF No. 16 at 17-18. Thus, the DOD may not contract with entities using Ligado's spectrum for commercial terrestrial operations. According to Ligado, "[i]n practice, this means that DOD cannot do business with any entity that contracts with Ligado for ATC operations in its spectrum." ECF No. 16 at 47. Ligado further avers that "[b]ecause 'the ability to contract with DOD is essential to businesses operating in the telecommunications industry,' not a single company has agreed to work with Ligado since the NDAA." ECF No. 16 at 48.

---

[7] "The NDAA makes it impossible for Ligado to use the ATC authority conferred by the FCC license without DOD's sign off—effectively blocking Ligado from using its ATC authority." ECF No. 16 at 17.

[8] The Court has no information about the estimate of costs provided in section 1664 other than Ligado's statement that DOD "has refused to certify estimates to replace potentially affected GPS devices under Section 1664." ECF No. 16 at 18.

Both parties agree that the FCC can modify or revoke any license that it has granted and that, if it does so, a takings claim does not lie.  If the FCC can do this, it follows that Congress may do so as well.  In enacting the NDAA with sections 1662-64, Congress effectively limited the FCC Order, apparently because it was concerned that harmful interference with DOD operations would ensue.  Thus, because the Secretary of Defense has not made the certification pursuant to section 1662, it may not contract with any entity that uses Ligado's spectrum even though to do so destroys Ligado's business.  Furthermore, because the DOD has not provided the cost estimate provided in section 1664, it cannot expend department funds to comply with the FCC Order.  Although the Court has presumed that the DOD did not certify as provided in 1662 because of the NASEM Report, the Court does not know why the DOD has not made the cost estimate in 1664.  In any event, Ligado argues that its business will be destroyed by the lack of certification in 1662, which appears to have a rational basis.  Therefore, puzzlement over the lack of estimate in 1664 does not affect the outcome.

Returning to the "FCC License As Property" notion, if an FCC license is not property vis-à-vis the FCC, then it is also not property vis-à-vis Congress.  Just as the FCC can terminate a license without effecting a taking, so Congress's limitations on the license, even if they effectively terminate it, cannot be challenged as a taking.  Therefore, Ligado's claims for a legislative taking cannot go forward.

But what does this conclusion say about Ligado's takings claim based on the "occupation" of its licensed spectrum by the DOD?  Per the NDAA, the DOD may not contract with entities operating in Ligado's spectrum and DOD may not use department funds to comply with the FCC Order.  But the Court does not see here a limitation on the license as such.  Congress has not taken over Ligado's licensed spectrum.  The provisions of the NDAA affect the DOD, not Ligado—at least directly.  Therefore, it seems that parts of Ligado's claims survive.

At the outset, the Court notes that for purposes of the Motion to Dismiss, the Court must accept the truth of Ligado's allegations.  Therefore, the Court finds that Ligado's licensed spectrum is property except insofar as the Government has limited it by the NDAA.  The Court also finds that the FCC's conditions basically require or depend on cooperation with the DOD to work out a modus operandi with the DOD, which cooperation (according to Ligado) has been frustrated by the DOD.  Therefore, Ligado's case may proceed even if the FCC's conditions are conditions precedent.  Finally, the Court finds that the DOD's alleged actions are authorized.  Thus, the Court **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Dismiss pursuant to RCFC 12(b)(6).

## VI.    CONCLUSION

For the reasons set forth above, the Court **GRANTS IN PART AND DENIES IN PART** the Government's Motion to Dismiss.  The Court **ORDERS** the Government to file its Answer to Plaintiff's Complaint within 45 days from the date of this Opinion and Order.

**IT IS SO ORDERED.**

<u>s/Edward J. Damich</u><br>
EDWARD J. DAMICH<br>
Senior Judge