IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| LIGADO NETWORKS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 23-1797 |
| v. | ) | |
| | ) | Senior Judge Damich |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO CERTIFY THE
COURT'S NOVEMBER 18, 2024 OPINION AND ORDER FOR
INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

L. MISHA PREHEIM
Assistant Director

NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

BORISLAV KUSHNIR
Senior Trial Counsel

PATRICK ANGULO
KYLE BECKRICH
Trial Attorneys

*Attorneys for Defendant*

January 16, 2025

### **TABLE OF CONTENTS**

**PAGE**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 6

    I.    The November 18, 2024 Order Involves A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion ............................ 6

        A.    The Court's Jurisdictional Holding Is A Controlling Question Of Law As To Which There is Substantial Ground For Difference Of Opinion ........... 6

        B.    Whether Ligado Possesses A Cognizable Property Interest In Its Spectrum License Constitutes A Controlling Question Of Law As To Which There is Substantial Ground For Difference Of Opinion ................ 9

        C.    Whether Ligado Has Alleged Authorized Government Conduct Constitutes A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion ........................................ 14

        D.    The Issue Of What Must Be Pleaded For A Physical Takings Claim With Respect To Licensed Spectrum Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion .............. 16

    II.    Immediate Appeal Will Materially Advance The Termination Of This Litigation ............................................................................................................ 18

    III.    A Stay Of Proceedings Is Warranted ................................................................ 19

CONCLUSION ................................................................................................................ 20

# **TABLE OF AUTHORITIES**

**PAGE(S)**

## **CASES**

*112 Genesee Street, LLC v. United States*,
   No. 23-1876C, 2024 WL 4564607 (Fed. Cl. Oct. 24, 2024) .................................................. 19

*Acadia Tech., Inc. v. United States*,
   458 F.3d 1327 (Fed. Cir. 2006) .......................................................................................... 15

*Acceptance Ins. Cos. Inc. v. United States*,
   503 F.3d 1328 (Fed. Cir. 2007) ............................................................................................ 7

*Alley's of Kingsport, Inc. v. United States*,
   106 Fed. Cl. 762 (2012) ...................................................................................................... 19

*Alpine PCS, Inc. v. United States*,
   878 F.3d 1086 (Fed. Cir. 2018), *cert. denied*, 139 S. Ct. 78 (2018) ................................ passim

*Am. Bankers Ass'n v. United States*,
   932 F.3d 1375 (Fed. Cir. 2019) .......................................................................................... 13

*Am. Pelagic Fishing Co., L.P. v. United States*,
   379 F.3d 1363 (Fed. Cir. 2004) ............................................................................................ 9

*AT&T Servs., Inc. v. FCC*,
   21 F.4th 841 (D.C. Cir. 2021) ............................................................................................ 17

*Brown v. United States*,
   73 F.3d 1100 (Fed. Cir. 1996) ............................................................................................ 17

*Cedar Point Nursery v. Hassid*,
   141 S. Ct. 2063 (2021) ........................................................................................................ 13

*Coast Fed. Bank, FSB v. United States*,
   49 Fed. Cl. 11 (2001) ..................................................................................................... 6, 18

*Conti v. United States*,
   291 F.3d 1334 (Fed. Cir. 2002) ..................................................................................... 11, 12

*Darby Development Co., Inc. v. United States*,
   112 F.4th 1017 (2024) ................................................................................................... 15, 16

*Del-Rio Drilling Programs, Inc. v. United States*,
   146 F.3d 1358 (Fed. Cir. 1998) ....................................................................................... 4, 15

*Doe No. 1 v. United States*,
   163 Fed. Cl. 608 (2023) ............................................................................................ 6

*FCC v. Sanders Bros. Radio Station*,
   309 U.S. 470 (1940) ................................................................................................ 11

*Federal Communications Commission and The National Telecommunications and Information*
   *Administration: Coordination Procedures in the 1695-1710 MHz and 1755-1780* MHz Bands,
   29 FCC Rcd. 8527 (2014) ......................................................................................... 8

*Fishermen's Finest, Inc. v. United States*,
   59 F.4th 1269 (Fed. Cir. 2023) ............................................................................... 11

*Folden v. United States*,
   379 F.3d 1344 (Fed. Cir. 2004) ................................................................................ 3

*Hearts Bluff Game Ranch, Inc. v. United States*,
   669 F.3d 1326 (Fed. Cir. 2012) .............................................................................. 12

*Hooe v. United States*,
   218 U.S. 322 (1910) ................................................................................................ 14

*In re NextWave Personal Comms.*,
   200 F.3d 43 (2d Cir. 1999) ..................................................................................... 11

*Laturner v. United States*,
   135 Fed. Cl. 501 (2017) ...................................................................................... 6, 19

*Matter of LightSquared Technical Working Group Report and LightSquared License*
   *Modification Application*,
   Order and Authorization, 35 FCC Rcd. 3772 (2020) ...................................... passim

*Members of Peanut Quota Holders Ass'n, Inc. v. United States*,
   421 F.3d 1323 (Fed. Cir. 2005) ........................................................................ 10, 11

*Mitchell Arms, Inc. v. United States*,
   7 F.3d 212 (Fed. Cir. 1993) .................................................................................... 12

*Mitchell v. United States*,
   267 U.S. 341 (1925) ................................................................................................ 14

*Mobile Relay Associates v. FCC*,
   457 F.3d 1 (D.C. Cir. 2006) ............................................................................. passim

*Mohawk Ind., Inc. v. Carpenter*,
   558 U.S. 100 (2009) ................................................................................................ 6

*Northrop Corp., Northrop Elecs. Sys. Div. v. United States*,
   27 Fed. Cl. 795 (1993) ......................................................................................... 18

*Pikes Peak Family Hous., LLC v. United States*,
   40 Fed. Cl. 673 (1998) ........................................................................................... 6

*Reid v. United States*,
   149 Fed. Cl. 328 (2020) ...................................................................................... 18

*Rith Energy, Inc. v. United States*,
   247 F.3d 1355 (Fed. Cir. 2001) .......................................................... 4, 14, 15, 16

*Rith Energy, Inc. v. United States*,
   270 F.3d 1347 (Fed. Cir. 2001) .......................................................................... 15

*Sandwich Isles Commc'ns, Inc. v. United States*,
   992 F.3d 1355 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022) ........... 3, 4, 7, 9

*Taylor v. United States*,
   959 F.3d 1081 (Fed. Cir. 2020) .............................................................. 5, 14, 17

*United States v. Bormes*,
   568 U.S. 6 (2012) .................................................................................................. 7

*United States v. Causby*,
   328 U.S. 256 (1946) ........................................................................................... 17

*United States v. Fuller*,
   409 U.S. 488 (1973) ........................................................................................... 11

*Wolfchild v. United States*,
   78 Fed. Cl. 472 (2007) .......................................................................................... 6

## **STATUTES**

28 U.S.C. § 1292(d)(2) ................................................................................. passim
28 U.S.C. § 1491(a)(1) ................................................................................... 7, 16
47 U.S.C. § 301 .......................................................................................... 13, 17
47 U.S.C. § 303(y) ............................................................................................ 17
47 U.S.C. § 304 ................................................................................................ 11
47 U.S.C. § 310(d) ........................................................................................... 12
47 U.S.C. § 312 ................................................................................................ 12
47 U.S.C. § 316(a)(1) ....................................................................................... 12

**<u>REGULATIONS</u>**

47 C.F.R. § 1.3 .................................................................................................................. 8
47 C.F.R. § 25.117 ........................................................................................................... 8

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LIGADO NETWORKS, LLC,     )
)
     Plaintiff,     )
)
     v.     )     No. 23-1797
)     Senior Judge Damich
THE UNITED STATES,     )
)
     Defendant.     )

## DEFENDANT'S MOTION TO CERTIFY THE COURT'S NOVEMBER 18, 2024 OPINION AND ORDER FOR INTERLOCUTORY APPEAL AND TO STAY PROCEEDINGS PENDING APPEAL

Defendant, the United States, respectfully requests that the Court certify its November 18, 2024 Order and Opinion (ECF No. 31) for interlocutory appeal pursuant to 28 U.S.C. § 1292(d)(2). In addition, the United States respectfully requests that the Court stay further proceedings pending appeal. We contacted plaintiff's counsel who informed us that plaintiff opposes this motion.

## INTRODUCTION

This case arises from a regulatory dispute in which Ligado Networks, LLC (Ligado) sought approval from the Federal Communications Commission (FCC) to obtain a modified license to operate a terrestrial network within "L-Band" spectrum when the license previously allowed for only satellite use (*i.e.*, Mobile Satellite Service (MSS)). On April 22, 2020, the FCC granted Ligado's license modification applications (the April 2020 Order)[1] subject to a number of conditions meant to address concerns from several Federal agencies, including the Department

---

[1] *In the Matter of LightSquared Technical Working Group Report and LightSquared License Modification Application*, Order and Authorization, 35 FCC Rcd. 3772 (2020).

of Defense (DoD) and the National Telecommunications and Information Administration (NTIA), that Ligado's proposed license modifications could cause harmful interference with the Global Positioning Systems, or GPS, which operates in nearby spectrum bands.  Ligado subsequently filed its complaint alleging that the Government had unlawfully prevented Ligado from using the spectrum licensed by the FCC to it for terrestrial purposes.  In the November 18, 2024 Opinion and Order, the Court granted in part and denied in part the Government's motion to dismiss.  The Court dismissed the legislative takings claim but denied the Government's motion to dismiss with respect to Ligado's physical, *per se* (*i.e.*, categorical) regulatory, and regulatory takings claims.

Section 1292(d) of Title 28, United States Code, authorizes this Court to certify an order for interlocutory appeal to the United States Court of Appeals for the Federal Circuit.  In relevant part, Section 1292(d)(2) provides:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2).  Therefore, this Court may certify its November 18, 2024 Order for interlocutory appeal by amending the order to state expressly that (1) it involves "a controlling question of law"; (2) "with respect to which there is a substantial ground for difference of opinion"; and (3) "an immediate appeal from [those] order[s] may materially advance the ultimate termination of the litigation."  *Id*.

We respectfully submit that the Court's Order meets the standards of certification with respect to four separate issues. ***First***, the Court determined that it possesses jurisdiction to entertain Ligado's takings claims. In doing so, it held that although the Federal Circuit had made it clear that certain claims implicating the Communications Act displace Tucker Act jurisdiction, that precedent was inapplicable because Ligado "does not challenge the validity or propriety of the FCC order concerned." Op. 7. Instead, the Court held that "Ligado seeks damages against the Government for allegedly not complying with the [April 2020 Order] and taking Plaintiff's licensed spectrum." Op. 8.

We respectfully submit that there is substantial ground for difference of opinion with the Court's ruling on this controlling legal issue. On a number of occasions, the Federal Circuit has held that the Communications Act provides a comprehensive remedial scheme that displaces Tucker Act jurisdiction even for takings claims. *See Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1361-65 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1092-98 (Fed. Cir. 2018), *cert. denied*, 586 U.S. 817 (2018); *Folden v. United States*, 379 F.3d 1344, 1357 (Fed. Cir. 2004). This precedent supports the conclusion that the Communications Act's displacement of Tucker Act jurisdiction is broader than just direct challenges to the propriety and validity of FCC orders as the Court held. The Act's comprehensive remedial scheme also displaces Tucker Act jurisdiction over any kind of claim arising from an FCC order—including takings claims—where the statutory framework can provide adequate relief. *Alpine*, 878 F.3d at 1096-97 (explaining why "the FCC had the power to grant Alpine adequate relief[] by eliminating the taking, providing compensation, or some combination"). As set forth below, Ligado has available adequate remedies at the FCC, with any

resulting order being appealable through the Communication Act's comprehensive statutory scheme.

**Second**, there is substantial ground for difference of opinion with respect to the Court's ruling on another controlling legal issue—whether Ligado alleged a cognizable property interest for takings purposes. The Court was correct in observing that the Federal Circuit in *Alpine* and *Sandwich Isles* did "not reach the issue of whether an FCC license is a valid property interest," even though those cases involved FCC licenses. Op. 8. But the Government did not raise a property interest argument in either of those cases; the Federal Circuit affirmed the dismissal of the complaints in both of those cases based on lack of jurisdiction due to the comprehensive remedial scheme of the Communications Act. Moreover, the D.C. Circuit's decision in *Mobile Relay Associates v. FCC,* 457 F.3d 1, 12 (D.C. Cir. 2006), as well as the language of the Communications Act, and the traditional hallmarks of private property as applied to FCC licenses further show that Ligado's FCC license is not cognizable property.

**Third**, there is substantial ground for difference of opinion with respect to the Court's holding that Ligado's complaint adequately alleged authorized government conduct for takings purposes. The heart of Ligado's complaint is that the Government has engaged in an "unlawful scheme" to prevent Ligado from using its FCC-licensed spectrum for terrestrial services. Compl. ¶ 1. Relying on *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998), this Court concluded that "in seeking damages for a taking under the Tucker Act . . . the government's action must fall 'within the scope of [the agencies'] duties'" and held that Ligado had alleged authorized conduct under that standard. Op. 10-11. But *Del-Rio* and subsequent Federal Circuit caselaw do not support the notion that a takings claim is cognizable

4

*because* the Government conduct is unlawful.  *See Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365-66 (Fed. Cir. 2001).

**Fourth**, there is substantial ground for difference of opinion with the Court's determination on the controlling legal issue of whether Ligado stated a cognizable physical takings claim based on alleged occupation of spectrum.  Even if FCC license holders could maintain a property right arising from a spectrum license, which the Government here contests, it would be extremely limited in nature, allowing only transmission and receipt within certain frequences without harmful interference.  In takings law, any such spectrum occupation claim would be most analogous to the airspace easement context where the Government only takes airspace by easement when Government aircraft operate so low and so frequently as to cause a "direct," "immediate," and "substantial" interference with the property owner's use or enjoyment of the property.  *See Taylor v. United States*, 959 F.3d 1081, 1090 (Fed. Cir. 2020).  The proper framework to be applied to a physical taking of FCC licensed spectrum is certainly a controlling issue of law, and one in which there is a substantial ground for a difference of opinion which the Federal Circuit should address in the first instance.

Immediate appeal may materially advance the ultimate termination of this litigation.  This case involves an extensive complaint seeking nearly $40 billion from the Government and raising claims implicating numerous Federal agencies, high-level Government officials, the White House, and Congress.  In the absence of interlocutory appeal on these dispositive legal issues, the parties will be forced into what would likely be years-long, expensive litigation that would drain resources and force discovery from numerous current and former officials.  Interlocutory appeal on any of the four disputed conclusions of law, however, may result in the end of the litigation, making discovery unnecessary altogether.

Accordingly, the Federal Circuit should be given the opportunity to address the controlling legal issues before any further proceedings are conducted. This Court should grant this motion to certify the November 18, 2024 Order for interlocutory appeal and stay further proceedings pending appeal.

## ARGUMENT

### I.   The November 18, 2024 Order Involves A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion

Section 1292(d)(2) requires the party moving for certification to identify a "controlling question of law" "with respect to which there is a substantial ground for difference of opinion[.]" 28 U.S.C. § 1292(d)(2). A question of law is "controlling" when resolving it would "materially affect issues remaining to be decided in the trial court." *Doe No. 1 v. United States*, 163 Fed. Cl. 608, 612 (2023) (quoting *Coast Fed. Bank, FSB v. United States*, 49 Fed. Cl. 11, 13 (2001) (quoting *Pikes Peak Family Hous., LLC v. United States*, 40 Fed. Cl. 673, 686 (1998))). An issue upon which "there is a substantial ground for difference of opinion" includes issues upon which courts are divided. *See Coast Fed. Bank,* 49 Fed. Cl. at 13-14. Even if there is no disagreement among courts, however, certification of an interlocutory appeal is also warranted when a question of first impression is at issue. *See Mohawk Ind., Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009); *Laturner v. United States*, 135 Fed. Cl. 501, 504 (2017); *Wolfchild v. United States*, 78 Fed. Cl. 472, 483-84 (2007); *Coast Fed. Bank,* 49 Fed. Cl. at 13-14.

As set forth below, these standards are satisfied here with respect to four legal issues.

### A.   The Court's Jurisdictional Holding Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion

First, the Court's holding that the Communications Act does not displace Tucker Act jurisdiction because Ligado "does not challenge the validity or propriety of the FCC order

concerned," Op. 7, is a controlling question of law as to which there is substantial ground for difference of opinion.

As a threshold matter, whether Ligado's takings claims must be channeled through the comprehensive remedial scheme of the Communications Act would materially affect the resolution at this Court given that the Court cannot entertain claims for which it lacks jurisdiction. *See Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1361-65 (Fed. Cir. 2021).

And a substantial ground for difference of opinion exists regarding the scope of the Communications Act's displacement of Tucker Act jurisdiction. Under the Tucker Act, this Court has jurisdiction to entertain "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Claims against the United States for just compensation pursuant to the Takings Clause fall within this jurisdictional grant. *See Acceptance Ins. Cos. Inc. v. United States*, 503 F.3d 1328, 1336 (Fed. Cir. 2007). But "statutory schemes with their own remedial framework exclude alternative relief under the general terms of the Tucker Act." *United States v. Bormes*, 568 U.S. 6, 12-13 (2012).

On multiple occasions, the Federal Circuit has held that the Communications Act provides a comprehensive remedial scheme that displaces Tucker Act jurisdiction, including for takings claims. *See Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355, 1361-65 (Fed. Cir. 2021), *cert. denied*, 142 S. Ct. 2647 (2022); *Alpine PCS, Inc. v. United States*, 878 F.3d 1086, 1092-98 (Fed. Cir. 2018), *cert. denied*, 586 U.S. 817 (2018). This precedent demonstrates that the Communications Act's displacement of Tucker Act jurisdiction extends

7

beyond just direct challenges to the propriety and validity of FCC orders as the Court held. Regardless of the plaintiff's characterization of its claim, the Act's comprehensive remedial scheme also displaces Tucker Act jurisdiction over any claim arising from an FCC order—including takings claims—where the statutory framework can provide adequate relief. *See Alpine*, 878 F.3d at 1096-97 (explaining why "the FCC had the power to grant Alpine adequate relief[] by eliminating the taking, providing compensation, or some combination").

Here, Ligado has available adequate remedies under the Communications Act. If Ligado informs the FCC of its concerns about alleged agency failure to cooperate so as to disallow license usage, the FCC can address this alleged failure to cooperate, including by setting aside or suspending the conditions at issue, in whole or with respect to specific agencies, locations, or devices at issue. 47 C.F.R. § 25.117. The FCC could also remedy the alleged refusal to cooperate by waiving any condition noncompliance by Ligado. *See id.* at § 1.3. Any resulting order from the FCC could then be appealed through the Communication Act's appellate scheme.[2] Ligado also has available avenues with the FCC to obtain relief with respect to any claim of interference with licensed spectrum. Indeed, the FCC routinely resolves coordination disputes between Federal and non-federal operators. The 2014 FCC precedent cited in the April 2020 Order itself contemplated "informal negotiation, mediation, or non-binding arbitration" to "clearly define and narrow the issues for formal agency resolution by NTIA, the Commission, or

---

[2] Because the Court also dismissed Ligado's legislative takings claim, we do not address the question of whether the Communications Act displaces Tucker Act jurisdiction with respect to that claim.

jointly, as applicable."[3]  Such action by the FCC would provide Ligado with adequate relief for any purported interference.  *See Alpine*, 878 F.3d at 1096.

**B.    Whether Ligado Possesses A Cognizable Property Interest In Its Spectrum License Constitutes A Controlling Question Of Law As To Which There is Substantial Ground For Difference Of Opinion**

Second, there is substantial ground for difference of opinion with the Court's holding on another controlling legal issue—whether Ligado alleged a cognizable property interest for takings purposes.  Op. 8-10.

As an initial matter, the existence of a cognizable property interest is a necessary element of any takings claim.  *Am. Pelagic Fishing Co., L.P. v. United States,* 379 F.3d 1363, 1372 (Fed. Cir. 2004).  Accordingly, reversal of the Court's property interest holding would end the litigation.

The Court held that the Federal Circuit in *Alpine PCS, Inc. v. United States*, 878 F.3d 1086 (Fed. Cir. 2018), and *Sandwich Isles Commc'ns, Inc. v. United States*, 992 F.3d 1355 (Fed. Cir. 2021), did "not reach the issue of whether an FCC license is a valid property interest," even though those cases involved FCC licenses.  Op. 8.  But that holding does not materially support the existence of a property interest in the license.  That is because the Government did not raise a property interest argument in those cases either before this Court or the Federal Circuit, and the Federal Circuit affirmed the dismissal of the complaints in both of those cases based on lack of jurisdiction due to the comprehensive remedial scheme of the Communications Act.

---

[3] *The Federal Communications Commission and The National Telecommunications and Information Administration: Coordination Procedures in the 1695-1710 MHz and 1755-1780 MHz Bands*, 29 FCC Rcd. 8527, 8539 (2014)

The D.C. Circuit's decision in *Mobile Relay Associates v. FCC,* 457 F.3d 1, 12 (D.C. Cir. 2006) further demonstrates that there is a substantial ground for difference of opinion on the property interest issue.  In that case, the Court rejected the plaintiff's takings claims, holding that FCC licenses "confer the right to use the spectrum for a duration expressly limited by statute subject to the Commission's considerable regulatory power and authority," and that such a "right does not constitute a property interest protected by the Fifth Amendment." *Id*. at 12.  This Court distinguished *Mobile Relay* because it involved "an action by the FCC in limiting a license," because it is not binding, and because it did not find a lack of a property interest for all takings claims.  Op. 8-9.  Although it is true that the decision is not binding on the Court of Federal Claims, the D.C. Circuit is the expert appellate court selected by Congress to adjudicate most FCC disputes.  And there does not appear to be any holding supporting the notion that a spectrum license is property for takings purposes, or that the license may be a property interest for takings purposes against one Federal Government agency but not another.  The question is therefore a matter of first impression, which is precisely the type of question warranting certification under section 1292(d)(2).

That there exists a substantial ground for disagreement is not undermined by the Court's analysis in conjunction with the property interest inquiry as to whether the agency issuing the license can "provide an adequate remedy" for the license holder.  Op. 9.  Even if the existence of an adequate remedy may be relevant to the jurisdictional issue, *Alpine*, 878 F.3d at 1096-97, there does not appear to be any legal support for analyzing that issue when determining whether an FCC license constitutes property.

A substantial ground for a difference of opinion is shown by several other factors analyzed by the Federal Circuit when determining whether a particular license constitutes a

cognizable property interest for takings purposes.  The Federal Circuit has explained that "[t]he parameters of a protected property interest are delimited by the law that creates the interest, and by 'existing rules and understandings' and 'background principles' derived from independent sources, such as state, federal, or common law."  *Members of Peanut Quota Holders Ass'n, Inc. v. United States*, 421 F.3d 1323, 1330 (Fed. Cir. 2005) (citation omitted).  In evaluating whether a license constitutes cognizable property, courts have paid particular attention to the text of the law defining the interest, as well as whether the license is revocable.  *See United States v. Fuller*, 409 U.S. 488, 492-94 (1973); *Fishermen's Finest, Inc. v. United States*, 59 F.4th 1269, 1276-79 (Fed. Cir. 2023); *Conti v. United States*, 291 F.3d 1334, 1340-44 (Fed. Cir. 2002).  Courts have also examined other traditional hallmarks of property such as "whether the citizen had the rights to exclude, use, transfer, or dispose of the property."  *Peanut Quota Holders*, 421 F.3d at 1330; *see Conti*, 291 F.3d at 1341-42.

Here, the language of the Communications Act makes clear that no person has an independent right to own or use spectrum, and that any limited spectrum use must flow instead from authority arising from the provisions of the Act.  *FCC v. Sanders Bros. Radio Station*, 309 U.S. 470, 475 (1940) ("The policy of the [Communications] Act is clear that no person is to have anything in the nature of a property right as a result of the granting of a license."); *see* 47 U.S.C. § 304 (license applicant must "waiv[e] any claim to the use of any particular frequency or of the electromagnetic spectrum as against the regulatory power of the United States because of the previous use of the same, whether by license or otherwise"); *id*. § 301 (providing that licenses are issued for "limited periods of time," and that a license holder has no "ownership" in the subject of the license); *In re NextWave Personal Comms.*, 200 F.3d 43, 51 (2d Cir. 1999). Accordingly, although the Takings Clause provides a limit on the taking of private property,

spectrum and licenses governing the use of spectrum are quintessential public assets controlled by Congress and beyond the purview of private ownership.

In addition, a number of other provisions of the Communications Act support the conclusion that no property interest exists in Ligado's spectrum license. In the Act, Congress expressly provided the FCC with authority to modify the terms of any license at any time "if in the judgment of the [FCC] such action will promote the public interest, convenience and necessity." 47 U.S.C. § 316(a)(1); *see Mobile Relay*, 457 F.3d at 11-12; *see also* 47 U.S.C. § 312 (identifying circumstances in which FCC can revoke license entirely). Indeed, the FCC has the statutory authority to reallocate assigned spectrum by modifying spectrum licenses, and the statutory language makes clear that Congress has not provided license holders with any right to continued use of that spectrum in such circumstances.

Moreover, other "traditional hallmarks of property" reasonably support the conclusion that Ligado cannot establish a cognizable property interest because Ligado lacks the authority under the statutory scheme to freely sell, assign, or transfer its license. *See Conti*, 291 F.3d at 1341-42. Congress has provided that spectrum licenses may be transferred only "upon application to the [FCC] and upon finding by the [FCC] that the public interest, convenience, and necessity will be served thereby." 47 U.S.C. § 310(d). In other words, the transferability of a spectrum license is expressly contingent on Government approval.

The Government also has a high degree of control over spectrum, and "[w]here a citizen voluntarily enters into an area which from the start is subject to pervasive Government control, a property interest is likely lacking." *Hearts Bluff Game Ranch, Inc. v. United States*, 669 F.3d 1326, 1330 (Fed. Cir. 2012) (citing *Mitchell Arms, Inc. v. United States*, 7 F.3d 212 (Fed. Cir. 1993)). Although "not a *per se* exclusion of all permit or regulatory based takings," *id.*, this is

another indicator of whether the holder of a government-issued license or permit has a cognizable property interest. *See Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1385-86 (Fed. Cir. 2019). All of these factors reasonably support that Ligado lacks a cognizable property interest in an FCC license.

And any potential property interest in a spectrum license is further diminished by the fact that Ligado's license is contingent on unfulfilled conditions. 47 U.S.C. § 301 (requiring that a spectrum license-holder must comply with the "terms" and "conditions" of a license). "[T]he [G]overnment does not take a property interest when it merely asserts a 'pre-existing limitation upon the [property] owner's title.'" *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2079 (2021) (citation omitted).

The FCC did not grant Ligado an unfettered right to immediately use its modified license to roll out a terrestrial network. *See* April 2020 Order, 35 FCC Rcd. at 3835-41. Instead, to address GPS interference, including interference harmful to national security, the FCC attached numerous conditions that Ligado must satisfy before it may use its modified license for terrestrial purposes, conditions that Ligado itself proposed and that inhered in the title to any purported property arising from the order. *Id.* Ligado has not alleged that it has satisfied those conditions in its required reports to the FCC. The Court held that it was irrelevant whether Ligado has satisfied the conditions of the license and whether they were conditions precedent because Ligado alleged that the Government was at fault for not satisfying the conditions. Op. 3, 10. In doing so, the Court determined that the FCC had required DoD and other agencies to comply with the terms of the April 2020 Order. *See* Op. 3, 10. But the April 2020 Order did not order the agencies to do anything. The FCC stated that "[c]onsistent with FCC precedent in other proceedings, we would expect Ligado and U.S. Government agencies to work together in good

13

faith, including with regard to negotiation to resolve any disputes." April 2020 Order, 35 FCC Rcd. at 3825. Moreover, the Court did not identify authority for the proposition that the FCC could order the agencies to cooperate, and by determining that it could, the Court misconstrued the April 2020 Order.

In sum, there is a substantial difference of opinion as to whether Ligado possesses a cognizable property interest for takings purposes in its FCC license, and the Federal Circuit should accordingly address this threshold controlling question on an interlocutory basis.

### C.    Whether Ligado Has Alleged Authorized Government Conduct Constitutes A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion

Third, there is substantial ground for difference of opinion with the Court's holding that Ligado has alleged authorized government conduct for taking purposes.

For takings liability to attach, the Government action at issue must be authorized. *Mitchell v. United States*, 267 U.S. 341, 345 (1925); *Hooe v. United States*, 218 U.S. 322, 335-36 (1910); *Taylor v. United States*, 959 F.3d 1081, 1089 n.4 (Fed. Cir. 2020) ("A government action cannot be a taking if . . . the government actors lacked the 'authority' to take the action[.]") (citations omitted); *Rith Energy, Inc. v. United States*, 247 F.3d 1355, 1365-66 (Fed. Cir. 2001); *Del-Rio Drilling Programs, Inc. v. United States*, 146 F.3d 1358, 1362 (Fed. Cir. 1998).

The gravamen of Ligado's complaint is that the Government has engaged in an "unlawful scheme" to prevent Ligado from using its FCC-licensed spectrum for terrestrial services. Compl. ¶ 1. Ligado alleges that DoD has improperly used Ligado's exclusively licensed spectrum in a manner that interferes with Ligado's use under its license; that to "conceal" DoD's use of its spectrum, DoD and Commerce have "adopted a strategy of deceit and misinformation," advancing pretextual claims of harmful interference with GPS; and that DoD officials have

14

provided false or misleading testimony to Congress in an effort to "continue to use Ligado's exclusively licensed spectrum without compensation."  Compl. ¶¶ 1-2, 41-50, 76-90.

Citing *Del-Rio*, this Court concluded that "in seeking damages for a taking under the Tucker Act . . . the government's action must fall 'within the scope of [the agencies'] duties'" and held that Ligado had alleged authorized action under that framework.  Op. 9-10.  But the Court also acknowledged that the substance of Ligado's takings theory rests on the notion that DoD's conduct might effect a taking *because* that conduct was inconsistent with the FCC's April 2020 Order and therefore unlawful.  *See* Op. 7 ("[Ligado] argues that various Government actors have not complied with the Order, preventing [Ligado] from using its license."); *id*. at 8 ("Ligado seeks damages against the Government for allegedly not complying with the Order and taking [Ligado's] licensed spectrum.").  Neither *Del-Rio* nor subsequent Federal Circuit caselaw support the theory that a takings claim may be cognizable *because* the Government conduct is unlawful.  *See Rith Energy, Inc. v. United States*, 270 F.3d 1347, 1352 (Fed. Cir. 2001) (on petition for reconsideration) ("Rith's complaints about the wrongfulness of the permit denial are therefore not properly presented in the context of its takings claim."); *Rith Energy*, 247 F.3d at 1365-1366; *Acadia Tech., Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006).

The Federal Circuit's recent decision in *Darby Development Co., Inc. v. United States*, 112 F.4th 1017 (2024), does not change the analysis.  In *Darby*, the Federal Circuit endorsed the principle that Executive Branch action may be deemed "authorized" for takings purposes even if "unlawful," "if it was done within the normal scope of the agent's duties."  *See id*. at 1027.  As an initial matter, the Government has filed a petition for rehearing *en banc* in *Darby*.  In any event, there is a substantial ground for difference of opinion as to whether this Court's decision on the authority issue goes beyond what the Federal Circuit held in *Darby* and prior cases.  The

*Darby* court held that, if restrictions imposed by the Executive Branch interfere with established property rights in a way that would *otherwise* constitute a taking, the Government cannot escape takings liability simply by showing that the Executive Branch restrictions were not authorized by statute.  *See* 112 F.th at 1033 ("Having concluded that there is no 'lack of authorization' impediment to Appellants' takings claim, we turn now to whether their complaint stated a claim for a physical taking by the government.").  The *Darby* court thus held that the plaintiffs in that case might be able to demonstrate a compensable taking *even though* the relevant Executive Branch conduct was inconsistent with the governing statute.  But nothing in *Darby* (or prior Federal Circuit caselaw) supports the conclusion that the Government's conduct may effect a taking *because* that conduct was unlawful, such as being inconsistent with the FCC's April 2020 Order.  In fact, Federal Circuit precedent is directly contrary to such a conclusion.  *See Rith Energy*, 247 F.3d at 1365-66.  Whether or not the illegality of particular Executive Branch conduct precludes takings liability for what would otherwise be a taking, that illegality itself cannot provide the basis for a takings claim.  Indeed, such an analytical framework would largely eviscerate the distinction between a compensable taking and an actionable tort.  28 U.S.C. § 1491(a)(1) (explaining that tort claims fall outside the scope of this Court's jurisdiction).  The Federal Circuit should be permitted to weigh in on this controlling issue of takings law upon which there is substantial grounds for a difference of opinion.

### D.    The Issue Of What Must Be Pleaded For A Physical Takings Claim With Respect To Licensed Spectrum Is A Controlling Question Of Law As To Which There Is Substantial Ground For Difference Of Opinion

Fourth, the issue of what must be pleaded for a physical takings claim with respect to licensed spectrum constitutes a controlling question of law as to which there is a substantial ground for difference of opinion.

16

The Court's opinion does not have a separate analysis resolving the Government's arguments regarding Ligado's physical takings claim, but the Court did remark that spectrum "is a physical phenomenon," and implicitly appears to deem Ligado's allegations that DoD was "occupying" the spectrum to be sufficient to state a physical takings claim.  Op. 8-9.  The Federal Circuit should be allowed to weigh in on what must be established for a physical taking involving FCC-licensed spectrum.  It is beyond cavil that Ligado has no independent property right in the spectrum—the Communications Act makes clear that no one can have a cognizable property interest in the spectrum itself.  47 U.S.C. § 301.  At most Ligado has only a limited ability to use the licensed spectrum subject to the restrictive terms and conditions of the license and the terms of the Communications Act and applicable regulations.  An FCC license holder has no right to "occupy" the spectrum or preclude another entity from "occupying" the spectrum.  Instead, the license holder is allowed to transmit and receive signals using certain frequencies while protected from harmful interference.  *See* 47 U.S.C. § 303(y); *AT&T Servs., Inc. v. FCC*, 21 F.4th 841, 843 (D.C. Cir. 2021) (rejecting challenge to FCC allowing unlicensed users to operate within particular spectrum bands in which incumbents operate).

To the extent that physical takings law has any role to play, spectrum would be much more analogous to airspace, and it is well accepted that the Government is not liable for a taking for every incursion into a property owner's airspace.  Instead, in that context, the Government only takes airspace by easement when Government aircraft operate so low and so frequently as to cause a "direct," "immediate," and "substantial" interference with the property owner's use or enjoyment of the airspace.  *See United States v. Causby*, 328 U.S. 256, 266-67 (1946); *Taylor v. United States*, 959 F.3d  1081, 1090 (Fed. Cir. 2020) (affirming dismissal of physical takings claim when plaintiff failed to plead elements of airspace easement claim); *Brown v. United*

*States*, 73 F.3d 1100, 1102 (Fed. Cir. 1996) (identifying the elements of an airspace easement claim including that the Government action directly and immediately and substantially interfered with plaintiff's use of its property).  There are substantial grounds for a difference of opinion as to whether this framework should apply to a physical taking based on licensed-spectrum and whether Ligado has met this standard.

## II.        Immediate Appeal Will Materially Advance The Termination Of This Litigation

The arguments above also show that immediate appeal will materially advance the termination of this litigation.  The question of whether an interlocutory appeal "will materially advance the termination of the litigation" focuses "in large part[,] on considerations of 'judicial economy' and the need to avoid 'unnecessary delay and expense' and 'piecemeal litigation.'" *Reid v. United States*, 149 Fed. Cl. 328, 331 (2020) (quoting *Coast Fed. Bank*, 49 Fed. Cl. at 14 (quoting *Northrop Corp., Northrop Elecs. Sys. Div. v. United States*, 27 Fed. Cl. 795, 798-99 (1993))).

An interlocutory appeal of the Court's order here necessarily implicates considerations of judicial economy, as well as the need to avoid unnecessary delay and expense.  This case involves not only a highly technical and complex field, but also a lengthy complaint seeking nearly $40 billion from the Government and raising claims implicating numerous Federal agencies, high-level Government officials, the White House, and Congress.  Indeed, the complaint itself makes allegations with respect to multiple high-ranking Government officials including, among others, former-FCC chairman Ajit Pai, retired Air Force Space Command General John Raymond, Commerce Secretary Gina Raimondo, Secretary of Defense Lloyd Austin, NTIA administrator Alan Davidson, former Secretary of Commerce Wilbur Ross, Under Secretary of Defense Michael Griffin and former Secretary of Defense Mark Esper.  If

interlocutory appeal is not sought on these threshold, dispositive legal questions, the Government will be forced into what would likely be years-long, expensive litigation that would drain resources and force discovery from numerous current and former Government officials.  The ability to avoid this type of discovery and reach an early resolution will materially advance the end of the litigation.  *See Laturner v. United States*, 135 Fed. Cl. 501, 505-06 (2017) (certifying order, in part, where an immediate appeal could obviate contentious and protracted discovery); *Alley's of Kingsport, Inc. v. United States*, 106 Fed. Cl. 762, 764 (2012) (certifying order, in part, where interlocutory review could preempt potentially broad discovery including testimony of "many high-level government officials").  In addition, Ligado's allegations implicate sensitive national security information, complicating discovery further.

## III.    A Stay Of Proceedings Is Warranted

Should the Court certify the November 18, 2024 Order for interlocutory appeal, the Government respectfully requests that the Court stay further proceedings pending resolution of our petition for interlocutory appeal and, if granted, the Federal Circuit's decision on that appeal.  Proceeding with discovery in this case while the Federal Circuit resolves controlling legal questions would subject the parties to costly and potentially needless discovery that an interlocutory appeal is precisely designed to avoid.  *See Laturner*, 135 Fed. Cl. at 506 (granting stay for the same judicial-economy reasons that merited certification of its order for interlocutory appeal); *112 Genesee Street, LLC v. United States*, No. 23-1876C, 2024 WL 4564607 at *5-6 (Fed. Cl. Oct. 24, 2024) (granting stay pending interlocutory review).  Indeed, the interests of judicial economy and unnecessary expense would not be served by proceeding into discovery, motions practice, experts, and trial, and then having the controlling legal issues be raised again in a post judgment appeal years from now.

19

## **CONCLUSION**

For these reasons, the Court should grant the United States' motion to certify the Court's

November 18 Order for interlocutory appeal and amend the order to include the following

express finding under 28 U.S.C. § 1292(d)(2):

> The Court finds that this order involves a controlling question of
> law with respect to which there is a substantial ground for
> difference of opinion and that an immediate appeal from the order
> may materially advance the ultimate termination of the litigation.

In addition, this Court should stay further proceedings pending appeal.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

s/L. Misha Preheim
L. MISHA PREHEIM
Assistant Director

s/Nathanael B. Yale
NATHANAEL B. YALE
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, DC 20044
Telephone: (202) 616-0464

BORISLAV KUSHNIR
Senior Trial Counsel

PATRICK ANGULO
KYLE BECKRICH
Trial Attorneys

January 16, 2025                    *Attorneys for Defendant*

21